[S.F. No. 23071. In Bank. July 9, 1974.]

MONA WATERS, Plaintiff and Appellant, v.
PACIFIC TELEPHONE COMPANY, Defendant and Respondent.

**COUNSEL**

Vernon W. Humber and Frederick E. Watson for Plaintiff and Appellant.

Pillsbury, Madison & Sutro, Francis N. Marshall, Noble K. Gregory, Walter R. Allan, Rankin, Oneal, Center, Luckhardt, Marlais, Lund & Hinshaw, Edward A. Hinshaw and James A. DeBois for Defendant and Respondent.

Frederick T. Searls, John C. Morrissey, Malcolm H. Furbush, Linda S. Friedman, Rollin E. Woodbury, Robert J. Cahall, William E. Marx, C. Hayden Ames, Donald J. Richardson, Jr., Gordon Pearce, Lynn Schenk, Dinkelspiel, Pelavin, Steefel & Levitt, Claude N. Rosenberg, John P. Mathis, Scott K. Carter and John S. Fick as Amici Curiae on behalf of Defendant and Respondent.

**OPINION**

**BURKE, J.**—In this case we must reconcile provisions of the Public Utilities Code which (1) deprive the superior courts of jurisdiction to "review, reverse, correct, or annul" any order or decision of the Public Utilities Commission or to interfere with the commission's performance of its official

duties (Pub. Util. Code, § 1759)[1] and which (2) vest the superior courts with jurisdiction to award damages against any public utility which acts unlawfully, or fails to act as required by law (§ 2106).[2]

In the instant case, defendant Pacific Telephone Company (Pacific) allegedly failed to furnish plaintiff adequate telephone service, as required by section 451;[3] accordingly, plaintiff instituted a damage action in superior court pursuant to the provisions of section 2106. As will appear, however, the commission has adopted a policy of limiting the liability of telephone utilities such as Pacific for acts of ordinary negligence to a specified credit allowance, as set forth in approved tariff schedules which form a contract with telephone service customers. Since an award of substantial damages to plaintiff would be contrary to the policy adopted by the commission and would interfere with the commission's regulation of telephone utilities, we have concluded that section 1759 bars the instant action. ■ We further conclude that, in order to resolve the potential conflict between sections 1759 and 2106, the latter section must be construed as limited to those situations in which an award of damages would not hinder or frustrate the commission's declared supervisory and regulatory policies. Our disposition of this case will not insulate the commission's policies regarding limitation of liability from review by this court; under sections 1756-1758, this court retains jurisdiction to review, on petitions for writ of review or certiorari, the lawfulness of any order or decision of the commission in accordance with the procedures set forth in those sec-

---

[1]Unless otherwise specified, all further statutory references in this opinion are to provisions of the Public Utilities Code.

Section 1759 provides that: "No court of this State, except the Supreme Court to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, except that the writ of mandamus shall lie from the Supreme Court to the commission in all proper cases."

[2]Section 2106 provides in pertinent part that "Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was wilful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person. . . ."

[3]Section 451 provides in pertinent part that ". . . Every public utility shall furnish and maintain such adequate, efficient, just, and reasonable service, instrumentalities, equipment, and facilities as are necessary to promote the safety, health, comfort, and convenience of its patrons, employees, and the public.

"All rules made by a public utility affecting or pertaining to its charges or service to the public shall be just and reasonable."

tions. As the instant action, however, is not before us on a petition for writ of review, we must focus our attention solely upon the question whether plaintiff's damage suit in superior court was properly dismissed.

Plaintiff, a real estate broker, alleged she suffered substantial damages by reason of Pacific's failure to provide adequate telephone service. According to plaintiff, on September 15, 1964, she contracted with Pacific to provide such service, but "continuously and up to and including the present time [April 1966] said defendants [Pacific and fictitious defendants] have breached said agreement in that they have continuously failed to perform the agreement." Plaintiff's alleged difficulties with her telephone included lack of proper maintenance service, incompleted calls, unauthorized removal of phones, improper installation of phones, and a variety of other frustrating experiences specified in her complaint. She sought from Pacific a total of $750,000 in damages as a result of Pacific's alleged negligence and breach of warranty.

In its answer, Pacific contended that under paragraph 14(a) of its tariff schedule 36-T, the customer is entitled to receive only a "credit allowance" in an amount limited to "the total fixed charges for exchange service" for the period during which the customer's phone is out of service.[4] Subsequently, Pacific sought a partial summary judgment limiting the amount of damages awarded to plaintiff to the fixed service charges for the period, as provided in the tariff schedule.

The trial court granted Pacific's motion, on the basis that the commission has exclusive authority to regulate all operations of public utilities, that

[4]Paragraph 14(a) of Pacific's tariff schedule, filed with and approved by the commission, and incorporated into Pacific's contract with plaintiff, provided as follows:

"14. INTERRUPTIONS AND FAILURES OF SERVICE

"(a) Credit Allowance for Interruption to Service

"Upon request of the subscriber the Company will allow subscribers credit in all cases where telephones are 'out of service,' except when the 'out of service' is due to the fault of the subscriber, for periods of one day or more from the time the fact is reported by the subscriber or detected by the Company, of an amount equal to the total fixed monthly charges for exchange service multiplied by the ratio of the number of days 'out of service' to the number of calendar days in the billing month.

"A day of 'out of service' will be considered to exist when service is not available for a period of twenty-four consecutive hours. When any 'out of service' period continues for a period in excess of an even multiple of twenty-four hours, then the total period upon which to determine the credit allowance will be taken to the next higher even twenty-four hour multiple.

"*In no case will the credit allowance for any period exceed the total fixed charges for exchange service for that period.*" (Italics added.)

the provisions of tariff schedule 36-T were approved by the commission and intended by it to limit the liability of telephone utilities to the amounts specified in the tariff, that such limitation is operative and binding upon plaintiff, and that the trial courts are without authority to interfere with or annul the commissions' orders and decisions. Plaintiff voluntarily waived her right to recover any credit allowance under Pacific's tariff, and a judgment of nonsuit was entered in Pacific's favor. Plaintiff appeals.

Initially, we note that the commission has been vested by the Legislature with broad supervisory and regulatory powers. "The commission may supervise and regulate every public utility in the State and may do all things, whether specifically designated in this part or in addition thereto, which are necessary and convenient in the exercise of such power and jurisdiction." (§ 701.) Every public utility must obey the orders, decisions, directions or rules prescribed by the commission "in any way relating to or affecting its business as a public utility . . . ." (§ 702.)

The commission is specifically empowered to require utilities to file tariff schedules containing rates, charges and classifications, "together with all rules, contracts, privileges, and facilities which in any manner affect or relate to rates, tolls, rentals, classifications, or service." (§ 489.) The commission may from time to time prescribe changes in the tariff schedules "as it finds expedient . . ." (§ 490) and may, following a hearing, establish new rates, classifications, rules, contracts, practices or schedules in lieu of prevailing ones. (§ 729; see § 761.) ■ The subject of limitations upon liability of telephone utilities has long been considered to be a proper subject for commission regulation and supervision,[5] and appro-

[5]Both this court and the United States Supreme Court have acknowledged that considerations of public policy which might be applicable to disputes between private parties (see, e.g., Civ. Code, § 1668) "are not 'necessarily applicable to provisions of a tariff filed with, and subject to the pervasive regulatory authority of, an expert administrative body.'" (*E. B. Ackerman Importing Co.* v. *City of Los Angeles,* 61 Cal.2d 595, 599 [39 Cal.Rptr. 726, 394 P.2d 566], quoting from *S.W. Sugar Co.* v. *River Terminals,* 360 U.S. 411, 417 [3 L.Ed.2d 1334, 1340-1341, 79 S.Ct. 1270].) As stated in the *Southwestern* case, "For all we know, it may be that the rate specified in the relevant tariff is computed on the understanding that the exculpatory clause shall apply to relieve the [utility] of the expense of insuring itself against liability for damage . . . and is a reasonable rate so computed."

In the instant case, as we point out below, the commission has taken into account for ratemaking purposes Pacific's limited liability for acts of ordinary negligence. Moreover, in a 1970 decision, the commission's hearing examiner pointed out that "at the present time, no liability insurance is available to insure against service or directory errors. If a change in the [limitation of liability] rule results in payouts greater than at present the money must come from the revenues of the companies affected." (Dec. No. 77406, 71 Cal.P.U.C. 229, 245.)

priate provisions have been included in Pacific's tariff schedules for several years prior to the events which led to the filing of plaintiff's complaint.

For example, at least as early as 1950 Pacific had filed with the commission for its approval tariff schedules which employed the credit allowance device as a limit of Pacific's liability to its customers. (See *Cole v. Pacific Tel. & Tel. Co.,* 112 Cal.App.2d 416, 417 [246 P.2d 686].) *Cole* involved a suit for $25,000 in damages for failure to include a customer's name and advertisement in Pacific's classified directory. Pacific's tariff schedule and contract with its customers provided that "In case of error or omission of the advertisement by the company, the extent of the company's liability shall be limited to a pro rata abatement of the charge paid to the company as the error or omission may affect the entire advertisement." The court upheld and enforced the foregoing provision.

The court first noted that "When such rule is of record with the Public Utilities Commission, its provisions, if reasonable, are binding upon the parties to the contract and will operate to limit the telephone company's liability as therein set forth. . . . 'The rates charged for such service are governed and fixed by the Public Utilities Act. They cannot be varied or departed from and are in part dependent upon [Pacific's] rule of limitation of liability. . . .' " (*Cole* v. *Pacific Tel. & Tel. Co., supra,* 112 Cal.App. 2d 416, 417-418.) The court discussed applicable cases from other jurisdictions which uphold the right of regulated utilities to limit their liability, and explained that "The theory underlying these decisions is that a public utility, being strictly regulated in all operations with considerable curtailment of its rights and privileges, shall likewise be regulated and limited as to its liabilities. In consideration of its being peculiarly the subject of state control, 'its liability is and should be defined and limited.' [Citation.] There is nothing harsh or inequitable in upholding such a limitation of liability when it is thus considered that the rates as fixed by the commission are established with the rule of limitation in mind. Reasonable rates are in part dependent upon such a rule." (*Id.,* p. 419.) The court concluded that, although a particular limitation provision may be challenged as unreasonable, the question of reasonableness should first be directed to the commission, not the trial courts. (See also *Riaboff* v. *Pacific T. & T. Co.,* 39 Cal.App.2d Supp. 775 [102 P.2d 465], upholding a similar limitation provision.)

More recently, in *Davidian* v. *Pacific Tel. & Tel. Co.,* 16 Cal.App.3d 750 [94 Cal.Rptr. 337], Pacific faced a $63,200 damage claim based upon its alleged negligence in omitting plaintiff's name and other information from the classified directory. Pacific successfully contended that it had

limited its liability for such negligence by means of a credit allowance provision similar to the provision involved in the instant case (fn. 4, *ante*). The provision in *Davidian* required Pacific to "allow credit for errors or omissions in listings of its subscribers" in various specified amounts "not in excess of" the monthly service charge or advertisement charge. Although the provision did not expressly state that Pacific's liability was limited to the credit allowance provided, the court explained that it was the commission's policy to treat the clause as a limitation provision.

The court in *Davidian* stated that the commission had taken into consideration Pacific's limitation of liability in fixing its rates for telephone service,[6] and reiterated the admonition in *Cole, supra,* that "Reasonable rates are in part dependent upon such a rule." The court also noted that Pacific formerly had included in its schedules a provision that "The Company assumes no liability for damages arising from errors and omissions in the making up or printing of its directories," but that the commission in 1965 (Dec. No. 69942, 65 Cal.P.U.C. 103) ordered this provision modified to reflect the actual practice of Pacific in granting a credit allowance. The commission's order, however, was not intended to change the measure of Pacific's liability to customers for negligence; it merely required Pacific to substitute a provision which indicated more specifically to the subscriber that he would be eligible for a credit allowance in the event of such negligence.

Finally, the court in *Davidian* pointed out that in 1970, following the events which led to the action filed in that case (and the instant case), the commission undertook an extensive investigation of the general question of limitation of liability by telephone utilities, and in its subsequent decision the commission made it clear that the credit allowance device has always been considered to be a rule limiting the utility's liability. (See Dec. No. 77406, 71 Cal.P.U.C. 229.) In this decision, the commission determined that as a matter of policy[7] telephone utilities should have at

---

[6]For example, a 1963 decision of the commission (No. 66406, 61 Cal.P.U.C. 760, 767), declares that "Charges for service are in part dependent upon defendant's [Pacific's] rules and regulations . . . limiting liability for errors and omissions in its directories. The rule has enabled defendant to provide its service to the public at a lesser cost than would be the case if the rule permitted greater liability for errors and omissions."

[7]In reaching its decision, the commission explained that "Among the factors to be considered with respect to limitation of liability rules are: (1) their impact on persons damaged, (2) their impact on ratepayers generally and (3) their impact on telephone corporations." (71 Cal.P.U.C., p. 234.) The commission adopted the findings and recommendations of its hearing examiner, who had noted that errors and service interruptions were inevitable in the operation of a telephone utility, that it may be impossible to determine the cause of a service interruption or failure,

least partial liability for "gross negligence," but that "*Abrogation* of respondents' [telephone utilities] limitation of liability rules with respect to errors or omissions involving ordinary negligence would have little if any impact in improving the services of telephone corporations. Said rules, with respect to errors or omissions involving ordinary negligence, are reasonable and for the future will be reasonable." (Italics added; 71 Cal. P.U.C., p. 249, ¶ 14.) The commission ordered all telephone utilities to adopt a standard form "Limitation of Liability" provision for their tariff schedules, which provision expressly limits the utility's liability to specified credit allowances.

Thus, the court in *Davidian* concluded that the former credit allowance provision constituted a reasonable limitation of Pacific's liability for ordinary negligence, and affirmed a lower court judgment dismissing the damage suit against Pacific. (Accord: *Hall* v. *Pacific Tel. & Tel. Co.*, 20 Cal. App.3d 953 [98 Cal.Rptr. 128].) Plaintiff herein contends that *Davidian* erred in accepting the commission's interpretation of the credit allowance provision as a limitation of liability. She relies upon a contrary holding in *Product Research Associates* v. *Pacific Tel. & Tel. Co.*, 16 Cal.App.3d 651, 658 [94 Cal.Rptr. 216], to the effect that the clause now before us "falls short of expressing defendant's intention to exculpate itself from negligence. Since defendant itself prepared and submitted the schedule it could have plainly stated that it intended to relieve itself from liability for interrupted or failure of service where such interruption or failure resulted from its own negligence. [Citations.] The subject schedule merely deals with a 'credit allowance' against service charges . . . ."

The court in *Product Research* conceded that the commission (Dec. No. 77406, *supra*) has treated the credit allowance provision as a rule limiting liability for negligence, but stated that "The foregoing decision . . . is not binding on this court insofar as it purports to hold that the subject tariff schedule is one exculpating defendant from liability for negligence. The sufficiency and validity of a clause or provision which purports to exculpate one from his own negligence is ultimately one for judicial resolution. [Citations.]" (P. 660.)

---

that the limitation of liability rule has "worked reasonably well" and has enabled the telephone companies "to provide service to the public at a lesser cost than would be the case if the rules permitted greater liability for errors and omissions," and that no liability insurance is presently available to insure against service errors. Although the examiner recommended a partial liability for "gross negligence," he also recommended that "any changes in the limitation of liability rules should not be permitted to have such a profound impact that smaller telephone companies might be faced with financial disaster and larger ones suffer dramatic changes in earnings which might prompt substantial rate increases." (*Id.*, p. 245.)

■ We agree that ordinarily a provision which is intended to limit one's liability for negligence must clearly and explicitly express that purpose, and that it is for the courts to determine whether or not the provision possesses the requisite precision and clarity. (See *Vinnell Co.* v. *Pacific Elec. Ry. Co.,* 52 Cal.2d 411, 414-415 [340 P.2d 604].) Yet, as we have pointed out (fn. 5, *ante*), general principles which might govern disputes between private parties are not necessarily applicable to disputes with regulated utilities. Pacific's use of a credit allowance provision as a means of limiting its liability for ordinary negligence has been considered and approved by the commission, and taken into account in setting its rates. Were the courts permitted to reappraise and reinterpret the language of commission-approved tariff schedules in the guise of "judicial construction," the supervisory and regulatory functions of the commission set forth above could easily be undermined.[8]

■ It stands undisputed that the commission has approved a general policy of limiting the liability of telephone utilities for ordinary negligence to a specified credit allowance, and has relied upon the validity and effect of that policy in exercising its rate-making functions. (See fn. 7, *ante.*) It also appears clear that to entertain suits such as plaintiff's action herein and authorize a substantial recovery from Pacific would thwart the foregoing policy. That being so, the express language of section 1759 (fn. 1, *ante*) bars plaintiff's action.

As we pointed out in *Pacific Tel. & Tel. Co.* v. *Superior Court (Sokol),* 60 Cal.2d 426, 430 [34 Cal.Rptr. 673, 386 P.2d 233], involving a damage suit against Pacific based on its refusal to provide telephone service, "The mandate of the Legislature, violated by the superior court in the case at bar [for refusing to grant Pacific's motion for summary judgment], is to place the commission, insofar as the state courts are concerned, in a position where it may not be hampered in the performance of any official act by any court, except to the extent and in the manner specified in the code itself. [Citations.] [¶] Hence, respondent [court], when it assumed jurisdiction to review and annul the decisions of the commission here in-

---

[8]Moreover, it seems apparent that the general rule set forth in the *Vinnell* case, *supra,* requiring precision of expression in drafting exculpatory clauses is based essentially on considerations of fairness to the injured party who might otherwise have refused to enter into the transaction. On the other hand, such considerations seem inapplicable to the customers of a telephone utility. Telephone service is a business and personal necessity, and the subscriber thereto ordinarily would not be motivated by the availability of damages in the event of negligent service.

volved, altered the scheme of review established by the Legislature. Respondent was therefore without jurisdiction to pass upon the question here presented. [Citation.]" (See also *Miller* v. *Railroad Commission,* 9 Cal.2d 190, 195 [70 P.2d 164, 112 A.L.R. 221]; *People* ex rel. *Public Util. Com.* v. *Ryerson,* 241 Cal.App.2d 115, 122 [50 Cal.Rptr. 246]; *Pratt* v. *Coast Trucking, Inc.,* 228 Cal.App.2d 139, 149-150 [39 Cal.Rptr. 332] [". . . no sensible person . . . should for a moment contend that there is an area within which the commission and the courts can legitimately reach exactly opposite and conflicting conclusions on a given set of facts"]; *Harmon* v. *Pacific Tel. & Tel. Co.,* 183 Cal.App.2d 1, 2-3 [6 Cal.Rptr. 542].)

Plaintiff maintains that section 2106, in permitting damage actions against utilities for their unlawful acts, authorizes the instant action in spite of the language and policy underlying section 1759. Yet the two sections must be construed in a manner which harmonizes their language and avoids unnecessary conflict. Section 2106 reasonably may be interpreted as authorizing only those actions which would not interfere with or obstruct the commission in carrying out its own policies. Indeed, the cases upon which plaintiff relies recognize this implicit limitation under section 2106. As stated in *Vila* v. *Tahoe Southside Water Utility,* 233 Cal. App.2d 469, 479 [43 Cal.Rptr. 654], following a review of the applicable cases, "The utility's obligation [to provide a "single service connection"] . . . was clear under an unambiguous provision in its own rules (rules which it had been required to adopt by order of the commission). [¶] Under these circumstances and under the authorities discussed above, we hold that the superior court had jurisdiction to hear and decide all issues framed by the complaint. *Existence and exercise of this jurisdiction is in aid and not in derogation of the jurisdiction of the commission.*" (Italics added; see also *People* v. *Superior Court (Dyke Water Company),* 62 Cal.2d 515, 517-518 [42 Cal.Rptr. 849, 399 P.2d 385], and cases cited.)

We conclude, therefore, that since the instant action asserted a claim for damages in excess of the credit allowance contained in a tariff schedule filed with and approved by the commission, and since the commission formerly[9] had adopted a policy of allowing telephone utilities to limit their liability for ordinary negligence by means of the credit allowance

---

[9]As we explain above, in 1970 the commission ordered the former provision changed so that telephone utilities are now liable, up to specified amounts, for *gross* negligence. The new provision expressly limits the utilities' liability for ordinary negligence to the specified credit allowances. (See 71 Cal.P.U.C. 229, 251-256.)

provision involved in this case, the trial court properly ruled in Pacific's favor.[10]

The judgment is affirmed.

Wright, C. J., McComb, J., Clark, J., Taylor, J.,* and Caldecott, J.,* concurred.

**MOSK, J.**—I dissent.

The Public Utilities Commission, by mere regulation, purports to limit liability for negligence inflicted by a utility upon a subscriber to the negligible amount of a credit on the subscriber's monthly bill. This is in callous disregard of the Legislature's direction contained in section 2106 of the Public Utilities Code which declares as clearly and as emphatically as the English language permits that: *"Any public utility* which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, *shall be liable* to the persons or corporations affected thereby *for all loss, damages* or injury caused thereby or resulting therefrom. If the court finds that the act or omission was wilful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person. . . ." (Italics added.)

*"Any public utility . . . shall be liable . . . for all loss . . . ."* How could a statute be more crystal clear? Nevertheless the majority construe section 2106 in a manner which does "not interfere with or obstruct the commission in carrying out its own policies" (*ante,* p. 11). This is a strange and unprecedented doctrine. The majority in effect hold that if an administrative agency rule conflicts with an unambiguous legislative enactment, the statute must yield. That this court, which has traditionally been solicitous of negligence victims, now approves of the administrative creation of negligent-immune corporate entities contrary to a relevant statute will come as incredible news to the Legislature, and will cause shock waves to reverberate in the tort and administrative law bar.

[10]To the extent *Product Research Associates* v. *Pacific Tel. & Tel. Co., supra,* 16 Cal.App.3d 651, is inconsistent with the views expressed herein, that case is hereby disapproved.
*Assigned by the Chairman of the Judicial Council.

On two recent occasions the Court of Appeal has correctly analyzed this precise problem. In 1971 it decided *Product Research Associates* v. *Pacific Tel. & Tel. Co.* (1971) 16 Cal.App.3d 651 [94 Cal.Rptr. 216] and this court denied a hearing. The precise Public Utilities Commission schedule involved here was at issue there. Despite that definitive opinion, the commission has persisted in the untenable view that its rule prevails over legislative enactments and, apparently, over court decisions.

The Court of Appeal reaffirmed *Product Research Associates* in its discussion in this case. I believe its analysis is sound and therefore adopt, as my dissent, the opinion of Justice Elkington, concurred in by Presiding Justice Molinari and Justice Sims:*

[ ] The question posed on the appeal is whether this schedule provides the sole measure of relief when a telephone subscriber suffers damage because of the inadequacy of the service.

We resolved an identical question, involving the same schedule, against the telephone company in *Product Research Associates* v. *Pacific Tel. & Tel. Co.* (1971) 16 Cal.App.3d 651 [94 Cal.Rptr. 216]. The Supreme Court by a four to three vote denied a hearing on that decision which as the company's counsel suggest, lends little, if any, additional authority to it. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 669-670.)

The company asks that we reconsider our holding in *Product Research Associates,* stating: "[There is] a square conflict of decision between this Court's *Product Research* decision on the one hand, and all other decisions which have dealt with the question of limited liability under telephone tariffs in California. . . . Without *Product Research*, appellant [Mona Waters] would be faced with an unbroken line of decisions upholding Pacific's series of tariff provisions limiting its liability for negligent service failures and directory errors and omissions as part of the company's customer service contracts and rate structure. *Product Research* stands alone to the contrary. . . ."

The "unbroken line" of judicial decisions relied upon are *Dollar-A-Day Rent-A-Car Systems, Inc.* v. *Pacific Tel. & Tel. Co.* (1972) 26 Cal.App.3d 454 [102 Cal.Rptr. 651]; *Hall* v. *Pacific Tel. & Tel. Co.* (1971) 20 Cal. App.3d 953 [98 Cal.Rptr. 128]; *Davidian* v. *Pacific Tel. & Tel. Co.* (1971)

---

*Brackets together, in this manner [ ] without enclosing material, are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or additions. (See *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 311, fn. 2, and cases cited [70 Cal.Rptr. 849, 444 P.2d 481].)

16 Cal.App.3d 750 [94 Cal.Rptr. 337]; *Cole* v. *Pacific Tel. & Tel. Co.* (1952) 112 Cal.App.2d 416 [246 P.2d 686]; and *Riaboff* v. *Pacific T. & T. Co.* (1940) 39 Cal.App.2d Supp. 775 [102 P.2d 465].

We have reexamined *Product Research Associates* and have concluded that it correctly states the law.

Among other things, we pointed out in *Product Research Associates,* that: "[U]nder Public Utilities Code section 2106 the courts of this state are expressly granted jurisdiction to award both compensatory and (in a proper case) exemplary damages against a public utility for a loss, damage or injury resulting from any unlawful act or omission to perform a required act. . . . Accordingly, an aggrieved party may prosecute an action in the courts for any loss or injury arising from a failure of a carrier or public utility '. . . to do any act or thing required to be done by the Constitution or any law of the state or any order or decision of the commission.' . . ." (16 Cal.App.3d, p. 655, fn. omitted.)

California's Constitution, article XII, section 23, as relevant, provides: "The [Public Utilities] Commission shall have and exercise such power and jurisdiction to supervise and regulate public utilities, in the State of California, and to fix the rates to be charged for commodities furnished, or services rendered by public utilities as shall be conferred upon it by the Legislature, and the right of the Legislature to confer powers upon the [Public Utilities] Commission respecting public utilities is hereby declared to be plenary and to be unlimited by any provision of this Constitution. . . ."

In the exercise of the broad power conferred upon it, the Legislature has enacted division one, part one (§§ 201-2113) of the Public Utilities Code. (Hereafter, unless otherwise noted, all statutory references will be to that code.)

Section 489 [ ] provides that a telephone company shall file with the Public Utilities Commission schedules showing its rates together with all rules and contracts which in any manner relate to such rates and its telephone service. Upon such filing and approval by the commission, the schedule becomes, in effect, the contract between the company and its subscribers. (See *Vila* v. *Tahoe Southside Water Utility,* 233 Cal.App.2d 469, 474 [43 Cal.Rptr. 654]; *Sherwood* v. *County of Los Angeles,* 203 Cal.App.2d 354, 359 [21 Cal.Rptr. 810].) Schedule 36-T, paragraph 14(a), is such a schedule.

Section 701 states: "The commission may supervise and regulate every public utility in the State and may do all things, whether specifically designated in this part or in addition thereto, which are necessary and convenient in the exercise of such power and jurisdiction."

Section 1759, upon which the company places heavy emphasis, provides: "No court of this State, except the Supreme Court to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, except that the writ of mandamus shall lie from the Supreme Court to the commission in all proper cases."

Summarizing these statutes the Supreme Court in *Pacific Tel. & Tel. Co.* v. *Superior Court (Sokol)* 60 Cal.2d 426, 430 [34 Cal.Rptr. 673, 386 P.2d 233], stated: "The mandate of the Legislature . . . is to place the commission, insofar as the state courts are concerned, in a position where it may not be hampered in the performance of any official act by any court, except to the extent and in the manner specified in the code itself. . . ."

But there are other pertinent statutes, also enacted by the Legislature under the authority of article XII, section 23, which have gone unnoticed in the company's briefs in *Product Research Associates* and on the instant appeal.

The first is section 451 which, in relevant part, asserts: "Every public utility shall furnish and maintain such adequate, efficient, just, and reasonable service, instrumentalities, equipment, and facilities as are necessary to promote the safety, health, comfort, and convenience of its patrons, employees, and the public."

Section 451 is a statutory command that the telephone company "shall"[1] furnish "adequate" service to its patrons. Failure to do so violates the statute and is unlawful. It expresses the public policy of this state that public utilities, without the customary competitive business incentives, shall be held to a high standard of performance in the service they have undertaken to render.

Section 2106 provides: "Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either

---

[1] " 'Shall' is mandatory and 'may' is permissive." (Pub. Util. Code, § 14.)

by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was wilful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person. . . ."

Here, for the purpose of this appeal, the evidence established that the company furnished and maintained inadequate telephone service to plaintiff, a patron, contrary to section 451. Since adequate service was required by a "law of this state" the company was liable to plaintiff "for all loss, damages, or injury caused thereby and resulting therefrom." And an "action to recover for such loss, damage, or injury may be brought in *any court of competent jurisdiction.*" (Italics added; § 2106.)

The company, however, speaks of the state's policy that the commission be allowed to function free of encroachment by the courts. It insistently contends that allowing plaintiff her action would "hamper" the commission. The argument is that its schedule's "credit allowance" is an integral part of the "rate making" procedure, and that but for it, telephone rates would necessarily be higher.

We note first, the previously quoted language of *Pacific Tel. & Tel Co.* v. *Superior Court (Sokol) supra,* 60 Cal.2d 426, 430, that the legislative mandate requires that the commission "not be hampered in the performance of any official act by any court, *except to the extent and in the manner specified in the* [*Public Utilities Code*] *itself. . . ."* (Italics added.) Section 2106, allowing court actions for damages resulting from violation of law, is clearly one of the exceptions contemplated by the Supreme Court.

Furthermore, it seems doubtful that amounts paid as damages in such cases are to be considered expenses of operation, to be paid ultimately by the utility users in higher rates, instead of by the company's shareholders. "In rate making it is settled that the commission need not accept cost figures that are unjustifiably high because of inefficient methods of operation. . . ." (*Cal. Mfrs. Assn.* v. *Public Utilities Com.,* 42 Cal.2d 530, 536 [268 P.2d 1]; and see 64 Am.Jur.2d, Public Utilities, § 188, pp. 703-704.) And it may reasonably be said that *any* claim or judgment paid by the telephone company, if considered a cost of doing business, is necessarily related to the rates allowed by the commission. This is true whether the claim or judgment results from "inadequate service" or, for instance, the negligent operation of a company automobile.

Damage actions brought against public utilities under section 2106 do not tend to *hamper* the commission in the performance of its duties. By entertaining such actions courts do not " 'review, reverse, correct or annul' any order or decision of the commission," or ". . . suspend or delay the execution or operation thereof, [or] enjoin, restrain or interfere with the commission"; section 1759 is therefore not offended. (See *Coast Truck Line* v. *Asbury Truck Co.,* 218 Cal. 337, 339 [23 P.2d 513].) Indeed, such actions brought under section 2106 tend to enforce the Public Utilities Code, and thus *assist* the commission in the performance of its duties. " 'Existence and exercise of this [§ 2106] jurisdiction is in aid and not in derogation of the jurisdiction of the commission.' " (*Dollar-A-Day Rent-A-Car Systems, Inc.* v. *Pacific Tel. & Tel. Co., supra,* 26 Cal.App.3d 454, 461, italics ommitted; *Vila* v. *Tahoe Southside Water Utility, supra,* 233 Cal.App.2d 469, 478.)

We find several cases where public utilities, *acting contrary to statute* in matters otherwise within the commission's jurisdiction, were found to be subject to court action under section 2106 (or its predecessor, Public Utilities Act, § 73; Stats. 1915, ch. 91, p. 165) by an aggrieved person. When these cases were decided, section 1759, here relied upon (or its predecessor statute, Public Utilities Act, § 67; Stats. 1915, ch. 91, pp. 161-162) was in effect. Where excess charges had been levied by a public utility, relief was available to the customer through court action. (*California Adj. Co.* v. *Atchison, etc. Ry. Co.,* 179 Cal. 140, 144-145 [175 P. 682, 13 A.L.R. 274]; *Sunset Pac. Oil Co.* v. *Railroad Co.,* 110 Cal.App. Supp. 773, 777-780 [290 P. 434].) Where a public utility acted without the required "certificate of public convenience and necessity," an interested party had recourse to the commission or to the courts. (*Coast Truck Line* v. *Asbury Truck Co., supra,* 218 Cal. 337, 338-339; *Truck Owners etc., Inc.* v. *Superior Court,* 194 Cal. 146, 157-159 [228 P. 19].) And one refused water service could have enlisted the aid of the court or the commission for appropriate relief. (*Vila* v. *Tahoe Southside Water Utility, supra,* 233 Cal.App.2d 469, 477-480.) In the latter case the court said (p. 477): "It has never been the rule in California that the commission has *exclusive* jurisdiction over any and all matters having any reference to the regulation and supervision of public utilities. So to hold would be to deny any meaningful application of section 2106 expressly granting jurisdiction to the courts to award both compensatory and (in a proper case) exemplary damages." In each of these cases it was found that the court action aided, rather than hampered, the commission in its duties.

We now consider the "unbroken line" of cases upon which the telephone company relies.

Four of these—*Dollar-A-Day Rent-A-Car Systems, Inc.* v. *Pacific Tel. & Tel. Co., supra,* 26 Cal.App.3d 454; *Hall* v. *Pacific Tel. & Tel. Co.,* 20 Cal.App.3d 953 [98 Cal.Rptr. 128]; *Davidian* v. *Pacific Tel. & Tel. Co., supra,* 16 Cal.App.3d 750; and *Cole* v. *Pacific Tel. & Tel. Co.,* 112 Cal. App.2d 416 [246 P.2d 686]—concerned *only* claims of negligence in the omission of subscribers' names or advertising, or refusal of advertising, in the telephone book's classified section or "yellow pages." Unlike section 451 requiring the furnishing and maintenance of *adequate telephone service,* no statute (at least none brought to our attention) makes a corresponding requirement concerning the yellow pages, the use of which is optional to the subscriber. Reasonably, and according to authority (see *Hall* v. *Pacific Tel. & Tel. Co., supra,* pp. 954-955), use of the classified section of the telephone book is no part of the adequate telephone service required by law. In these four cases the basic premise of that presently before us—a violated statutory duty—is missing.[2]

The remaining case relied upon by the company is *Riaboff* v. *Pacific T. & T. Co., supra,* 39 Cal.App.2d Supp. 775, which was decided by the Appellate Department of the San Francisco City and County Superior Court. There a subscriber's name was erroneously spelled, and therefore misplaced, in the telephone directory (as distinguished from the yellow pages). The court applied a then existent "credit allowance" rule of the telephone company. Although the court seemed to think otherwise (pp. 777-778), the directory listing was probably a part of the adequate service required of the company by the then operable section 13(b) of the Public Utilities Act. (Stats. 1915, ch. 91, p. 122.) But we observe that the court failed to consider section 73 of the Public Utilities Act (predecessor to the present day § 2106), which also in such cases authorized damage actions "in any court of competent jurisdiction." Citing authority, Mr. Witkin tells us that "[p]robably the strongest reason for overruling a decision is that it is contrary to a statutory provision which was either not discovered or was known but ignored in the opinion. . . ." (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 686.)

Some reliance is placed on *Pacific Tel. & Tel. Co.* v. *Superior Court (Sokol) supra,* 60 Cal.2d 426, where damages were unsuccessfully sought for the disconnecting of Sokol's telephone. But there it was held that the

---

[2]In the case at bench, as in *Product Research Associates* v. *Pacific Tel. & Tel. Co., supra,* 16 Cal.App.3d 651, we are concerned only with the telephone company's Schedule 36-T, paragraph 14(a) covering "Interruptions and Failures of Service" (see fn. 1, *ante*) and failure to furnish the statutorily required "adequate service." Neither in *Product Research Associates,* nor here, do we pass upon the company's Schedule 36-T, paragraph 17(b)3 (see *Davidian* v. *Pacific Tel. & Tel. Co., supra,* 16 Cal.App.3d at p. 753), concerning "[E]rrors or Omissions in [classified] Directories."

telephone company had acted. *according to law,* i.e., "upon reasonable cause" to believe that the telephones were being used for an illegal purpose. Section 2106 was therefore inapplicable.

None of the authorities relied upon by the telephone company is found to be inconsistent with our holding in *Product Research Associates* v. *Pacific Tel. & Tel. Co., supra,* 16 Cal.App.3d 651.

It is urged that we must accept the interpretation of the commission that Schedule 36-T, paragraph 14(a), provides the sole remedy for deficient telephone service. The argument is patently invalid. Plaintiff's rights, if any, are derived from Public Utilities Code sections 451 and 2106, not the telephone company's schedule. The court having jurisdiction over the case must itself construe these statutes. Concerned with orders of the commission, the court in *Coast Truck Line* v. *Asbury Truck Co., supra,* 218 Cal. 337, 339, stated: "As a court of general jurisdiction the superior court may properly interpret and give effect to any document or order even though it be the result of action by the legislative, executive or judicial branch of the government. . . ."

We make no assertion that the state may not allow the Public Utilities Commission to limit a public utility's liability for its negligence, or acts done in violation of law. We have determined that here the state, acting through the Legislature, has chosen not to do so. [ ]

[The judgment should be reversed.]