LAHKE ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* CINCINNATI BELL, INC., APPELLEE AND CROSS-APPELLANT.

(No. C-800048—Decided March 11, 1981.)

*Messrs. Rendigs, Fry, Kiely & Dennis* and *Mr. Frederick Brockmeier, IV,* for William K. Lahke and William K. Lahke & Associates.

*Messrs. Frost & Jacobs* and *Mr. James R. Adams,* for Cincinnati Bell, Inc.

BLACK, P.J. William K. Lahke (Lahke) seeks treble damages from Cincinnati Bell, Inc. (Bell), under R.C. 4905.61, alleging that insufficient and unreasonable telephone service damaged his business. The trial court held Bell liable but awarded Lahke damages of only $7.05, because it limited the amount of damages to three times the pro rata refund that had previously been paid to Lahke pursuant to Bell's tariff. Lahke now wants to have damages reassessed.

In its cross-appeal, Bell claims that, having paid Lahke the refund due under the tariff, it has no further liability. We affirm the lower court's determination of liability for damages beyond any penalty assessed by the Public Utilities Commission of Ohio (PUCO) but reverse the award of damages and remand the case for redetermination thereof.

When Lahke moved his architectural lighting business to a new location, Bell told him that this would necessitate changing his telephone number. They agreed that, pursuant to Bell's standard practice, calls dialed to his old number would be intercepted by a live operator (live intercept) who would inform the caller of Lahke's new number. Lahke soon discovered, however, that calls dialed to his old number were answered by a machine intercept telling the caller, by recorded message, that the number dialed had been disconnected. On Lahke's protest, this condition was corrected three days later.

Lahke also moved a separate business (kinetic energizers and water softeners) to the new location, and a new number was assigned to this business. Calls dialed to this business' old number were also supposed to be handled by live intercept, pursuant to agreement, but Lahke found that instead, these calls were referred to the new number assigned to his lighting business. After several communications from Lahke, this condition was rectified.

Lahke complained to PUCO alleging that insufficient and unreasonable service had contributed to the collapse of his business. A PUCO Attorney Examiner recommended that the full commission find that R.C. 4905.22[1] had been violated by Bell. While the commission found that Bell's conduct was unjust and unreasonable, it held that it lacked jurisdiction to grant money damages. Lahke then filed his complaint in the Court of Common Pleas of Hamilton County. Cross-motions for summary judgment were filed, and the court ruled that Bell was liable for damages but limited them as noted above.

Lahke's single assignment of error asserts that the lower court erred in granting Bell's motion for partial summary judgment limiting damages. We agree with this claim. PUCO has no power to grant money damages, but, under R.C. 4905.61,[2] a common pleas court may. The statute provides that if a public utility violates any one of a series of statutes, including R.C. 4905.22, it is liable to the injured party "* * * in treble the amount of damages sustained in consequence of such violation * * *." We believe that this statute extends subject matter jurisdiction to the courts only after a violation of one of the designated statutes has been established before PUCO pursuant to R.C. 4905.26. *State, ex rel. Dayton Power & Light Co.*, v. *Kistler* (1979), 57 Ohio St. 2d 21 [11 O.O.3d 108];

[1] R.C. 4905.22 reads as follows:

"Every public utility shall furnish necessary and adequate service and facilities, and every public utility shall furnish and provide with respect to its business such instrumentalities and facilities, as are adequate and in all respects just and reasonable. All charges made or demanded for any service rendered, or to be rendered, shall be just, reasonable, and not more than the charges allowed by law or by order of the public utilities commission, and no unjust or unreasonable charge shall be made or demanded for, or in connection with, any service, or in excess of that allowed by law or by order of the commission."

[2] R.C. 4905.61 reads as follows:

"If any public utility or railroad does, or causes to be done, any act or thing prohibited by Chapters 4901, 4903, 4905, 4907, 4909, 4921, 4923, and 4925 of the Revised Code, or declared to be unlawful, or omits to do any act or thing required by such chapters, or by order of the public utilities commission, such public utility or railroad is liable to the person, firm, or corporation injured thereby in treble the amount of damages sustained in consequence of such violation, failure, or omission. Any recovery under this section does not affect a recovery by the state for any penalty provided for in such chapters."

*Milligan* v. *Ohio Bell Telephone Co.* (1978), 56 Ohio St. 2d 191 [10 O.O.3d 352]; *North Ridge Investment Corp.* v. *Columbia Gas of Ohio, Inc.* (1973), 49 Ohio App. 2d 74 [3 O.O.3d 131]. By reason of PUCO's finding that Bell had violated R.C. 4905.22, the Court of Common Pleas had jurisdiction to hear Lahke's complaint and to award damages.

Bell argues, however, and the lower court agreed, that the amount of damages is limited by those provisions of General Exchange Tariff No. 6[3] (filed with and approved by PUCO) that purport to limit damages to an amount equal to the pro rata charge to the customer for the period of service in question. We do not agree. We hold that the intention of the legislature in enacting R.C. 4905.61 was that the "damages sustained in consequence of such violation" shall be determined in accordance with the general principles of the common law without reference to regulations or tariffs pro-

mulgated or approved by PUCO. The last sentence of R.C. 4905.61 states that the recovery of such damages shall not affect the recovery by the state of penalties provided for elsewhere in the Revised Code. This suggests to us that the General Assembly intended to differentiate between statutory penalties and general damages.

Bell urges that there is no inequity in upholding a limitation on liability to customers because PUCO takes such limitations into account in establishing utility rates. The issue before us, however, concerns not the equities related to rate fixing, but whether R.C. 4905.61 should be given its plain meaning.

Bell also points to an apparent conflict between R.C. 4905.61, which authorizes treble damages, and R.C. 4903.12,[4] which denies the power to courts other than the Supreme Court to review, suspend or delay PUCO orders or to interfere with PUCO in the perfor-

---

[3] General Exchange Tariff No. 6 reads, in pertinent part, as follows:

"The liability of the Telephone Company for damages arising out of mistakes, omissions, interruptions, delays, or errors or defects in transmission occurring in the course of furnishing service or facilities and not caused by the negligence of the customer, or of the Telephone Company in failing to maintain proper standards of maintenance and operation and to exercise reasonable supervision, shall in no event exceed an amount equivalent to the proportionate charge to the customer for the period of service during which such mistake, omission, interruption, delay or error or defect in transmission occurs."

The wording and sentence structure of this section of the tariff is unfortunate because it creates an ambiguity that subjects it to two possible interpretations. First, the tariff can be read as creating two categories of Telephone Company liability that are limited by the tariff: (1) liability stemming from mistakes, omissions, interruptions, delays or errors in the course of furnishing services and not caused by the negligence of the customer, and (2) the liability stemming from a failure to maintain

proper standards of maintenance and operation or to exercise reasonable supervision. Alternatively, the tariff can be read as limiting liability only when damages arise from mistakes, omissions, interruptions, delays or errors in the course of furnishing services *and not caused by either* customer negligence or the negligence of the telephone company in failing to maintain proper standards or exercise reasonable supervision. Adoption of the latter alternative would remove the tariff as an issue in this case because Lahke's injuries arose as a result of Bell's negligence in failing to provide reasonable supervision. The issue of interpretation was not raised by counsel, and we use the former interpretation *arguendo*.

[4] R.C. 4903.12 reads as follows:

"No court other than the supreme court shall have power to review, suspend, or delay any order made by the public utilities commission, or enjoin, restrain, or interfere with the commission or any public utilities commissioner in the performance of official duties. A writ of mandamus shall not be issued against the commission or any commissioner by any court other than the supreme court."

mance of its duties. Bell claims that awarding damages beyond the liability stated in its tariff is an interference with PUCO in the performance of its duties. We disagree, because we conceive that the provision for private recovery of treble damages for statutory violations, far from interfering with PUCO's orders, aids in their enforcement by furnishing another incentive for the utility company to operate in accordance with PUCO's dictates.

Analogous questions have been addressed by Ohio courts of appeal. *Correll v. Ohio Bell Telephone Co.* (1939), 63 Ohio App. 491 [17 O.O. 211], held that a tariff effectively limited liability in an action by a consumer for failure to include him in the telephone directory, but it appears that the customer did not make a claim under R.C. 4905.61 (formerly G.C. 614-68). We have not been cited to, nor have we found, any Ohio decision holding that a tariff can limit damages in a court action commenced under a statute expressly providing for consequential damages. Bell refers to *Waters v. Pacific Telephone Co.* (1974), 12 Cal. 3d 1, 114 Cal. Rptr. 753, wherein the California Supreme Court held, in a case with a statutory scheme and issues resembling the ones involved in the case *sub judice,* that damages, under a California statute similar to R.C. 4905.61, were limited by a tariff approved by the utility commission. To the extent that *Waters* is inconsistent with our holding, we decline to follow it. We believe that a *Waters* interpretation would ignore the plain meaning of "damages sustained in consequence of such violation." Lahke's assignment of error has merit.

Bell's single assignment of error in its cross-appeal alleges that the lower court erred in granting summary judgment for Lahke on the issue of liability because Lahke was not entitled to judgment as a matter of law. Bell contends that PUCO, in its Opinion and Order,[5] did not find a violation of any substantive provision of R.C. Chapter 4905, a prerequisite for a finding of liability by the trial court under R.C. 4905.61. We do not agree.

Bell relies principally upon the following two conclusions of law contained in the PUCO Order and Opinion:

"(6) The service rendered the complainant by Cincinnati Bell was not, as a matter of law, inadequate on the record in this case.

"(7) The machine intercept service provided the complainant by the respondent for a four day period was, pursuant to Section 4905.26, Revised Code, unjust and unreasonable because respondent always provides its subscribers with live operator intercept unless the subscriber wants no transfer of calls and, in this case, respondent agreed to provide the live operator intercept and complainant expected it to be provided."

Bell reads conclusion No. 6 as an express finding by PUCO that Bell had not violated the substantive provisions of R.C. 4905.22. Bell asserts that conclusion No. 7 does no more than establish a violation of R.C. 4905.26, a section that is merely procedural, setting forth the steps to be followed in prosecuting a claim before PUCO. A careful reading of R.C. 4905.22, however, reveals that the utility has a duty not only to furnish "adequate service," but also to furnish "instrumentalities and facilities * * * in all respects just and reasonable." Inasmuch as conclusion No. 7 incorporates the language of R.C. 4905.22 by implication, we interpret the PUCO Order and Opinion to mean that a violation of R.C. 4905.22 was found in an action properly commenced under

---

[5] While PUCO's Order and Opinion is not physically attached to Lahke's complaint as alleged, it is attached to his motion for summary judgment. Bell in its motion for summary judgment and in its appellate brief refers specifically to the Order and Opinion. We therefore consider its contents to be conceded.

R.C. 4905.26. We find no merit in Bell's assignment of error.

We affirm that part of the court's order granting partial summary judgment for Lahke. We reverse that part of the court's order granting partial summary judgment for Bell and remand this cause for reassessment of damages.

*Judgment accordingly.*

PALMER and KLUSMEIER, JJ., concur.