BULBMAN, INC., APPELLANT/CROSS-RESPONDENT, v. NEVADA BELL, RESPONDENT/CROSS-APPELLANT.

No. 21733

January 24, 1992                               825 P.2d 588

*Kevin J. Mirch,* Reno, for Appellant/Cross-Respondent.

*Woodburn, Wedge & Jeppson* and *Shawn B. Meador* and *Suellen Fulstone,* Reno, for Respondent/Cross-Appellant.

## OPINION

*Per Curiam:*

### THE FACTS

Appellant Bulbman, Inc. (Bulbman) is a Reno, Nevada, company that markets and distributes light bulbs. Bulbman's business is primarily conducted through telephone and mail orders. Respondent Nevada Bell (Nevada Bell) is a regulated public utility engaged in the business of providing business and residential telephone services. Nevada Bell is governed by tariffs promulgated and approved by the Nevada Public Service Commission. These tariffs include Tariff No. A2, which limits Nevada Bell's liability "arising out of or in any way connected with any defect, error, omission, delay, interruption, suspension or other failure in connection with furnishing service or facilities . . . ."

In 1986, Bulbman concluded that its existing telephone system could not handle the volume of calls being placed and that no more phone lines could be added to that system. As a result, Gerald Roth, Jr. (Roth), a managerial employee of Bulbman and son of the company's owner, contacted Bill McDonald (McDonald), an independent telephone consultant, for advice on

how best to expand Bulbman's telephone system. After examining several expansion alternatives, McDonald recommended the Centrex system, and Bulbman accepted this recommendation.

Having made the decision to go with Centrex, Roth contacted Nevada Bell and was referred to Nevada Bell salesman David Dehls (Dehls). According to Bulbman, Dehls stated that the system took only thirty minutes to install and made additional representations concerning the system's cost, performance and reliability. Bulbman also alleges that Dehls failed to disclose problems in the Centrex system that were known to Nevada Bell.

On October 14, 1986, a Centrex system was installed at Bulbman's place of business. In their affidavits, three Nevada Bell employees responsible for installing the system stated that the actual cut-over took less than thirty minutes to complete. Bulbman contends that the installation was not completed in thirty minutes because the system was not properly operating after this thirty minute period.

Additional problems plagued Bulbman's Centrex system for several days after it was installed. At one point, at least twenty percent of Bulbman's incoming 800 ("WATS") line calls were not being received. Not until October 21, 1986, one week after Nevada Bell installed Bulbman's system—did the system operate properly.

Bulbman filed suit against Nevada Bell, alleging (1) breach of contract, (2) breach of warranty, and (3) intentional misrepresentation (fraud). Nevada Bell subsequently moved for summary judgment, seeking to invoke Tariff No. A2 as a defense to Bulbman's breach of contract and breach of warranty claims and to dismiss the fraud claim for lack of triable issues of material fact. The trial court partially granted Nevada Bell's motion, determining that the tariff limitation on liability was valid and enforceable and that there was no basis for the claim in fraud, and ordered the parties to appear for a hearing on the issue of damages. Prior to this hearing, the parties stipulated to damages of $1,000.00 and on June 4, 1990, the trial court entered final judgment. Bulbman appeals both the final judgment and the order partially granting summary judgment.

## DISCUSSION

### I. NEVADA BELL'S LIMITED LIABILITY.

Bulbman contends that Tariff No. A2's limitation on liability does not apply to Nevada Bell's Centrex system because the system is a "competitive product." In support of this contention, Bulbman cites the March 1988, decision of the Nevada Public

Service Commission (Docket 87-371) exempting the system from tariff regulation. This argument lacks merit.

First, Bulbman purchased and installed Centrex in October of 1986 and Nevada Bell did not apply to the Public Service Commission to have its Centrex product exempted from tariff until March of 1987. It was not until March of 1988 that the Public Service Commission entered its order directing that Nevada Bell's Centrex be exempted from tariff. Thus, when Bulbman purchased and installed its Centrex system, Nevada Bell operated under the Public Service Commission's tariffs, including Tariff No. A2.

Furthermore, Bulbman misunderstands the exemption from tariff granted Nevada Bell in March of 1988. Under NRS 704.040(3), the Public Service Commission is authorized to exempt "to the extent it deems reasonable" any services of a telecommunication or public utility "from any or all of the provisions [governing the regulation of public utilities]" upon a determination that the services are competitive and that further regulation is unnecessary. Pursuant to this statute, the Public Service Commission exempted Nevada Bell's Centrex from tariff regulation as to *pricing* so as to allow Centrex to compete in a competitive market. The Public Service Commission did not remove the system from the coverage of Tariff No. A2. Tariff No. A9, which describes the tariff exemption granted to Nevada Bell in March of 1988, expressly states that Tariff No. A2 is "incorporated by reference as applicable to the provisioning of those services [Centrex] exempt from tariff by Docket 87-371."

We hold that Tariff No. A2's liability limitation applies to the Centrex system purchased by Bulbman.

Tariff No. A2 provides in relevant part:

> The liability, if any, of the Utility arising out of or in any way connected with any defect, error, omission, delay, interruption, suspension or other failure in connection with furnishing service or facilities shall, unless otherwise provided in the tariff schedules, be in an amount not in excess of the charge for the service or facility involved for the period during which the defect, error, omission, delay, interruption, suspension or other failure continues.

The trial court found this tariff to be valid and enforceable as to Bulbman's breach of warranty and breach of contract claims. In doing so, the trial court adopted the position held by most jurisdictions; namely, upholding validly promulgated provisions of Public Service Commission tariffs and holding that the liability limitations contained in such tariffs apply to claims for simple

negligence and breach of contract. *See, e.g.,* Waters v. Pacific Telephone Company, 523 P.2d 1161 (Cal. 1974). Also consistent with this majority view is the trial court's conclusion that tariff liability protection should not be accorded to willful, wanton conduct or gross negligence. Thus Tariff No. A2 does not apply to Bulbman's fraud claim, and Nevada Bell concedes as much.

Confronting this issue for the first time, we concur in the trial court's decision. As Nevada Bell observes, absent liability limitations such as that contained in Tariff No. A2, the broad liability exposure faced by utilities would create tremendous upward pressure on utility service rates. For example, although Bulbman's claim concerns a minor defect in telephone equipment, Bulbman claims to have suffered over $730,000 in damages from the disruption in its telephone service. Defects and disruptions are inevitable when providing service to hundreds of thousands of customers. If Nevada Bell were to be found liable for similar business losses arising out of every telephone disruption, the potential liability would be enormous. As a result, utilities would be forced to raise rates to cover the increased costs of providing service.

In *Waters,* the plaintiff claimed that Pacific Telephone had, among other things, improperly installed the telephone system, furnished inadequate telephone service, removed phones without authorization and failed to provide maintenance. The plaintiff sought an award of damages in the amount of $750,000. *Id.* at 1163. In affirming summary judgment in favor of Pacific Telephone, the California Supreme Court held that the public service commission has broad supervisory and regulatory powers, that the limitation of liability is a proper subject of regulation and supervision and that the commission had properly approved the liability limiting tariff. *Id.* at 1163-1167. In explaining the public policy considerations that support enforcement of liability limiting tariffs, the court stated:

> The theory underlying [enforcement of liability limitations] is that a public utility, being strictly regulated in all operations with considerable curtailment of its rights and privileges, shall likewise be regulated and limited as to its liabilities. In consideration of its being peculiarly the subject of state control, 'its liability is and should be defined and limited.' [citation omitted]. There is nothing harsh or inequitable in upholding such a limitation of liability when it is thus considered that the rates as fixed by the commission are established with the rule of limitation in mind. Reasonable rates are in part dependent upon such a rule.

*Id.* at 1164 (quoting Cole v. Pacific Tel. & Tel. Co., 246 P.2d 686, 688 (1952)). We find the *Waters* rationale persuasive and

therefore affirm the trial court's endorsement of this majority view.[2]

## II. *BULBMAN'S CLAIM IN FRAUD.*

Under NRCP 56(c), summary judgment should only be granted when there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. Wiltsie v. Baby Grand Corp., 105 Nev. 291, 292, 774 P.2d 432, 433 (1989). A genuine issue of material fact exists where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Valley Bank v. Marble, 105 Nev. 366, 367, 775 P.2d 1278, 1279 (1989) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).

Orders granting summary judgment are reviewed de novo. Tore, Ltd. v. Church, 105 Nev. 183, 185, 772 P.2d 1281, 1282 (1989). On appeal, this court is required to determine whether any genuine issues of material fact were created by the pleadings and proof offered below. *Id.* While the pleadings and proof offered below must be construed in the light most favorable to the non-moving party, Hoopes v. Hammergren, 102 Nev. 425, 429, 725 P.2d 238, 241 (1986), the non-moving party must, by affidavit or otherwise, set forth specific facts demonstrating the existence of a genuine issue for trial or have summary judgment entered against him. Collins v. Union Fed. Savings & Loan, 99 Nev. 284, 294, 662 P.2d 610, 618-619 (1983). The non-moving party " 'is not entitled to build a case on the gossamer threads of whimsy, speculation, and conjecture.' " *Id.* at 302, 662 P.2d at 621 (quoting Hahn v. Sargent, 523 F.2d 461, 467 (1st Cir. 1975), *cert. denied,* 425 U.S. 904 (1976)).

In partially granting Nevada Bell's motion for summary judgment, the trial court concluded that Bulbman had failed to demonstrate the existence of any triable issue of material fact with respect to Bulbman's fraud claim. In particular, the trial court determined that "there is a paucity of evidence . . . from which a court could infer any intention on the part of [Nevada Bell] to deliberately cause harm or to deliberately deceive [Bulbman]." On appeal, Bulbman contends that the district court erred in granting summary judgment as to its fraud claim. We agree with the trial court.

A plaintiff has the burden of proving *each* element of fraud

---

[2]Tariff A9 requires that "all investments, expenses and revenues associated with [Centrex] services" be retained within Nevada Bell's regulated rate base. Thus, Bulbman is wrong to assert that upholding Tariff A2's liability limitation allows Nevada Bell to "have its cake and eat it too."

claim by clear and convincing evidence. Lubbe v. Barba, 91 Nev. 596, 540 P.2d 115 (1975). These elements are:

1. A false representation made by the defendant;

2. Defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation);

3. Defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation;

4. Plaintiff's justifiable reliance upon the misrepresentation; and

5. Damage to the plaintiff resulting from such reliance.

*Id.* at 599, 540 P.2d at 117.

Summary judgment as to the fraud claim is proper. First, Bulbman fails to raise a genuine issue concerning whether Nevada Bell either knowingly made false representations or lacked sufficient basis for making the representations. Nevada Bell's representations to Bulbman about the cost of Centrex and the installation time are estimates and opinions based on past experience with the system. As such, these representations are not actionable in fraud. *See* Clark Sanitation v. Sun Valley Disposal, 87 Nev. 338, 487 P.2d 337 (1971). Nevada Bell's representations as to the reliability and performance of the system constitute mere commendatory sales talk about the product ("puffing"), also not actionable in fraud. *See e.g.,* Coy v. Starling, 630 P.2d 1323 (Or.App. 1981). Furthermore, in his deposition, Gerald Roth, Jr., testified that he did not believe Nevada Bell had intentionally lied to him about its Centrex system. Rather, Roth stated that Nevada Bell might have been "more careful" in making certain representations, particularly with respect to how long it would take to install a Centrex system. Roth's testimony establishes the absence of fraudulent intent on the part of Nevada Bell.

Bulbman also fails to demonstrate a triable issue concerning whether Bulbman was induced to purchase Centrex by the alleged misrepresentations of Nevada Bell. The deposition testimony indicates that Bulbman based its decision to purchase Centrex solely on the advice of the independent telephone consultant retained by Bulbman.

Where an essential element of a claim for relief is absent, the facts, disputed or otherwise, as to other elements are rendered immaterial and summary judgment is proper. *See* Sims v. General Telephone & Electric, 107 Nev. 516, 815 P.2d 151 (1991). Bulbman fails to demonstrate triable issues of material fact as to the essential elements of a fraud claim. At most, Bulbman's

evidence presents a question of fact concerning the discrepancy between what Nevada Bell promised and what Nevada Bell actually performed. The mere failure to fulfill a promise or perform in the future, however, will not give rise to a fraud claim absent evidence that the promisor had no intention to perform at the time the promise was made. Webb v. Clark, 546 P.2d 1078 (Or. 1976). This case involves a routine commercial transaction, a purchase and sale of services. The intentional wrongful conduct required to convert a contract case into a fraud case cannot be found here. Or, as the trial court commented, the evidence in this case "is simply not the stuff of an intentional tort sounding in fraud."

## CONCLUSION

The trial court correctly concluded that the liability limitation contained in Nevada Public Service Commission Tariff No. A2 applies to Bulbman's claims in negligence and breach of contract but does not cover the claim of intentional wrongdoing. In so concluding, the trial court followed a majority of neighboring jurisdictions. As to Bulbman's claim of intentional misrepresentation, the trial court committed no error in finding no material issues of genuine fact existed for trial. Among other things, there is no evidence that Nevada Bell harbored the requisite fraudulent intent.

For the reasons specified above, the partial summary judgment entered by the district court is affirmed.