132 F.3d 38
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ECM, INC., Plaintiff-Appellant-Cross Appellee,
v.
PLACER DOME U.S., INC.; Cortez Gold Mines,
Defendants-Appellees-Cross Appellant.
ECM, Inc., Plaintiff-Appellee,
v.
Placer Dome U.S., Inc.; Cortez Gold Mines, Defendants-Appellants.
 No. 96-15966, 96-16019.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted Sept. 18, 1997.
Decided Dec. 10, 1997.
As Amended on Denial of Rehearing March 2, 1998.
 
 Appeal from the United States District Court for the District of Nevada Edward C. Reed, Jr., District Judge, Presiding.
 Before: ALDISERT,** CHOY and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 ECM appeals the district court's summary judgment in favor of Placer Dome. It also challenges the district court's formulation of several jury instructions and evidentiary rulings. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand for further proceedings.
 
 I. OVERVIEW
 
 3
 ECM, Inc. leased land in Nevada to Royal Gold, Inc. for gold exploration and mining. Royal Gold and Placer Dome, manager of Cortez Gold Mines, entered into the Royal-Cortez Joint Venture Agreement ("RCJVA"), to explore the leased land for gold. During the course of exploration of its own land, which is located adjacent to ECM's land, Placer Dome drilled a hole and discovered the possibility of a significant amount of gold on ECM's land called the Gold Acres South Claims ("GAS Claims"). Placer Dome entered into negotiations with ECM and Royal Gold to become the sole lessee of ECM's land. During these negotiations, Placer Dome did not disclose its discovery.
 
 
 4
 ECM sued Placer Dome claiming: (1) Placer Dome had a contractual obligation under the lease agreement between ECM and Royal Gold, founded on an alleged assignment and tenancy in common, to pay ECM a royalty on Placer Dome's mining proceeds; (2) Placer Dome breached both the implied covenant of good faith and fair dealing and its fiduciary duty to ECM; and (3) during its negotiations with ECM, Placer Dome misrepresented the viability of possible future exploration of the GAS lands, and concealed its discovery of gold. The district court granted summary judgment on ECM's contract-based claims and held a trial on the tort claims. The jury found in Placer Dome's favor, and the district court denied ECM's motion for a new trial. This appeal followed.
 
 II. DISCUSSION
 A. Summary Judgment
 
 5
 ECM argues the district court erred in granting summary judgment in Placer Dome's favor on ECM's contract-based claims. ECM contends that under the terms of the RCJVA, Royal Gold assigned its rights and obligations under the ECM lease to the RCJVA. According to ECM, as assignees of Royal Gold's rights and obligations under the lease, the joint venture and Placer Dome are bound by the "area of influence" clause in the lease. Alternatively, ECM contends that by entering into the RCJVA, Royal Gold conveyed to Placer Dome a tenancy in common interest in Royal Gold's ECM leasehold. ECM argues that as a tenant in common, Placer Dome would be bound by any land covenants created by the ECM-Royal Gold lease.
 
 
 6
 The basis of jurisdiction is diversity. Nevada law "controls the substantive issues in this case, [but] the standards for determining whether summary judgment was appropriate call for application of federal law." Sullivan v. Massachusetts Mut. Life Ins. Co., 611 F.2d 261, 263-64 (9th Cir.1979).
 
 1. Joint Venture
 
 7
 The district court declined to determine whether a joint venture existed between Royal Gold and Placer Dome. Instead, the court held that, even if a joint venture existed, Royal Gold did not assign its rights and obligations under the ECM lease to the joint venture.
 
 
 8
 a. Existence of a Joint Venture
 
 
 9
 According to Nevada law, "[a] joint venture is a contractual relationship in the nature of an informal partnership wherein two or more persons conduct some business or enterprise, agreeing to share jointly, or in proportion to capital contributed, in profits and losses." Bruttomesso v. Las Vegas Metropolitan Police, 95 Nev. 151 154, 591 P.2d 254, 257 (1979).
 
 
 10
 Under the RCJVA, Royal Gold and Placer Dome shared managerial responsibilities as well as profits and losses. However, the RCJVA contains an express disclaimer that states: "It is not the intention of the Participants to create, nor shall this Agreement be construed to create, any mining, commercial or other partnership." On its face, the disclaimer seems to indicate that Placer Dome and Royal Gold did not intend to create a joint venture There is no Nevada law on point but the decisions from other state courts have held that courts are not bound by a disclaimer of joint venture or partnership. See Rubenstein v. Small, 75 N.Y.S.2d 483, 485 (1947); see also Arnold v. Erkmann, 934 S.W.2d.621, 630 (Mo.App.1996)
 
 
 11
 We conclude a genuine issue of material fact exists as to whether the RCJVA created a joint venture between Royal Gold and Placer Dome. As did the district court, we assume without deciding that a joint venture existed.
 
 
 12
 b. Assignment
 
 
 13
 ECM argues that, by the terms of the RCJVA, Royal Gold assigned its rights and obligations as the lessee of the ECM-Royal Gold lease to the joint venture between Royal Gold and Placer Dome. We disagree.
 
 
 14
 To determine if a joint venturer (which we assume Royal Cold is) contributed its previously-owned property to a joint venture, Nevada law considers the intent of the joint venturers at the time they entered into the joint venture. Picetti v. Orcio, 57 Nev. 52, 53, 58 P.2d 1046, 1047 (1936).
 
 
 15
 Section 2.4 of the RCJVA unambiguously states that "Royal shall hold for the benefit of the Joint Venture, record title to the leasehold estate in the ECM Claims included in the Properties...." This section 2.4 is consistent with section 12.2 of the RCJVA. Section 12.2 requires Royal Gold to assign its leasehold to Placer Dome if Royal Gold terminates the joint venture. This obligation to make a future assignment negates ECM's contention that Royal Gold had made the assignment. Moreover, if the joint venture already owned the leasehold, section 12.2 would have stated that the joint venture, not Royal Gold, would transfer the leasehold to Placer Dome upon termination by Royal Gold.
 
 
 16
 These provisions of the RCJVA are unambiguous. We affirm the district court's determination that Royal Gold did not assign its leasehold to the RCJVA.
 
 2. Tenancy in Common
 
 17
 As an alternative to the foregoing argument, ECM argues that Placer Dome was a tenant in common of the ECM leasehold, and was therefore bound by any covenants created by the ECM-Royal Gold lease.
 
 
 18
 In a tenancy in common, two or more people "share a single right to possession of the entire [property] interest." 7 Powell et al., Powell on Property, § 601, at 50-3 (1997). Placer Dome could have become a tenant in common of the ECM leasehold estate if Royal Gold conveyed to it an interest as tenant in common in that leasehold. See N.R.S. § 111.064; see, e.g., Sack v. Tomlin, 110 Nev. 204, 207, 871 P.2d 298, 301 (1994).
 
 
 19
 Paragraph 4.1 of the RCJVA contains the following provision: "it being the express purpose and intention of the Participants that their ownership of Assets [one of which is the ECM-Royal Gold lease] and the rights acquired hereunder shall be as tenants in common."
 
 
 20
 The language of section 4.1 could create a tenancy in common in the ECM-Royal Gold leasehold estate because the document in which this language appeared could be the conveyance.
 
 
 21
 Placer Dome argues that the RCJVA, when read as a whole, is ambiguous as to whether Royal Gold intended to convey a tenancy in common to Placer Dome. ECM argues that section 4.1 is not ambiguous, and alternatively that it was the intent of the parties to create a tenancy in common. In support of its alternative argument, ECM presented the deposition testimony of Stanley Dempsey, Royal Gold's chairperson, regarding the parties' intent. The relevant portion of Dempsey's deposition is as follows:
 
 
 22
 Q: Now my question is, Were PDUS [Placer Dome] and Royal Gold tenants in common with respect to the ECM lease? ...
 
 
 23
 A: Yes.
 
 
 24
 We conclude that a genuine issue of material fact exists as to whether Placer Dome was a tenant in common with Royal Gold in the ECM-Royal Gold leasehold estate. If Placer Dome held such a tenancy in common interest, it could be bound by any covenants, including the area of influence provision in the lease, and could be liable to ECM on a property theory.[1]
 
 
 25
 We reverse the district court's summary judgment and remand for a trial on the following issues: (1) Was Placer Dome a tenant in common with Royal Gold in the lessee's leasehold estate under the ECM-Royal Gold lease? (2) Did the "area of influence" clause create an affirmative property covenant? (3) Was Placer Dome bound by the covenant?
 
 B. Asserted Trial Errors
 
 26
 ECM argues the district court erred in formulating three jury instructions, and in making certain evidentiary rulings during trial.
 
 1. Jury Instructions
 
 27
 We review for abuse of discretion the district court's formulation of civil jury instructions. Fikes v. Cleghorn, 47 F.3d 1011, 1013 (9th Cir.1995). We review de novo whether a jury instruction correctly states the elements of a claim or defense. Masson v. New Yorker Magazine, Inc., 85 F.3d 1394, 1397 (9th Cir.1996).
 
 
 28
 a. Jury Instruction 23
 
 
 29
 In jury instruction 23, the district court summarized the facts established by its previous grant of summary judgment on ECM's contract-based claims. It did so pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.
 
 
 30
 Rule 56(d) allows a district court to "specify[ ] the facts that appear without substantial controversy" and to "direct[ ] such further proceedings in the action as are just." Fed.R.Civ.P. 56(d) (1997). In the present case, the district court did not overstep the bounds of Rule 56(d). The court merely clarified the jury's inquiry as to ECM's claims for misrepresentation and concealment. At the time the district court issued instruction 23, it had granted summary judgment in Placer Dome's favor on all of ECM's contract-based claims, and therefore instructed the jury that there was no contractual relationship between ECM and Placer Dome.
 
 
 31
 We hold that the district court did not abuse its discretion by summarizing its earlier ruling in jury instruction 23.
 
 
 32
 b. Jury Instruction 113B
 
 
 33
 ECM argues that the district court erred by giving jury instruction 113B which instructed the jury that ECM could not base its misrepresentation claims on statements made in conversations between Cavanaugh of ECM and three geologists employed by Placer Dome.
 
 
 34
 When a jury instruction is a limiting instruction, which instruction 1133 is, under Rule 105 of the Federal Rules of Evidence it is the equivalent of an evidentiary ruling which we review for abuse of discretion. See United States v. Restropo, 884 F.2d 1294, 1297 (9th Cir.1989).
 
 
 35
 ECM challenges the district court's observation that during the conversations with the three geologists, Cavanaugh, the president of ECM, was either acting as an agent of ECM or as an agent of Royal Gold. The district court concluded that if Cavanaugh was an agent of ECM, he solicited opinions from Placer Dome geologists and these are not admissible to show misrepresentation or fraud. If Cavanaugh was acting as an agent of Royal Gold, any statements made to him were not made to ECM and therefore, ECM cannot claim the statements misled ECM.
 
 
 36
 We reject ECM's challenge to jury instruction 113B. Under both. Nevada law and section 542 of the Restatement, statements of opinion cannot be the basis for claims founded on misrepresentation. See Rest.2d section 542 (1977); Clark Sanitation, Inc. v. Sun Valley Disposal Co., 87 Nev. 338, 340, 487 P.2d 337, 339 (1971). The statements made by the three geologists to Cavanaugh were opinions. The district court correctly concluded these statements could not form the basis for ECM's misrepresentation claims.
 
 C. Jury Instruction 101A
 
 37
 ECM argues the district court erred as a matter of law in its formulation of jury instruction 101A, which outlined the elements to support a claim for misrepresentation based on misrepresentations to a third party.
 
 
 38
 Under Nevada law, "[a] plaintiff has the burden of proving each element of a fraud claim by clear and convincing evidence." Bulbman, Inc. v. Nevada Bell, 108 Nev. 105, 109, 825 P.2d 588, 592 (1992). Nevada law is silent as to whether a plaintiff must prove the additional elements for "third party" fraud by clear and convincing evidence. In a fraud claim, the plaintiff must prove, by clear and convincing evidence, that the defendant made a misrepresentation to the plaintiff. The equivalent element in the context of "third party" fraud requires the plaintiff to prove by clear and convincing evidence that the defendant made a misrepresentation to a third party, and the third party must convey the misrepresentation to plaintiff. We hold that the district court properly applied the clear and convincing evidence standard to the two additional elements.
 
 
 39
 ECM argues the district court erred by instructing the jury that the substance of the communication conveyed to ECM by the third party was required to be "in all material respects, identical" to the representation made to the third party.
 
 
 40
 Section 533 of the Restatement of Torts states that in order to prove a case of third party misrepresentation, a plaintiff must demonstrate that the defendant "intends or has reason to expect that [the misrepresentation's] terms will be repeated or its substance communicated" to plaintiff. The district court interpreted this requirement to mean ECM was required to prove that any misrepresentation was conveyed to ECM and that the substance of the communication to the third party was in all material respects identical to the communication by the third party to ECM. The district court did not err in its wording of instruction 101A.
 
 2. Evidentiary Rulings
 
 41
 ECM argues the district court erred by (1) excluding evidence of alleged fraudulent statements made by Placer Dome executives during discussions with Gold Fields (the owner of the land adjoining the GAS Claims); and (2) not excluding the expert testimony of Stuart Havenstrite.
 
 
 42
 a. Alleged Fraudulent Statements
 
 
 43
 After a hearing, the district court decided to exclude evidence of Placer Dome's alleged fraudulent statements made during discussions with Gold Fields. ECM argues this evidence would have shown that Placer Dome had previously lied to others about the mineralization disclosed by Placer Dome's drill hole 91907. Placer Dome argues this "bad act" evidence was admissible under Rule 404(b).
 
 
 44
 We "appl[y] a four-part test to determine the admissibility of [bad act] evidence under Rule 404(b): (1) there must be a sufficient degree of evidence for the jury to find that the other acts were in fact committed; (2) the other acts evidence may only be introduced to prove a material issue in the case; (3) the other acts must not be too remote in time to the conduct charged; (4) the other acts must be sufficiently similar to the charged conduct when they are being introduced to show intent." United States v. DeSalvo, 41 F.3d 505 509 (9th Cir.1994) (internal citations omitted).
 
 
 45
 Placer Dome concedes that the evidence satisfies the first and third prongs of the DeSalvo test. The second prong is satisfied because Placer Dome's motive in making the statements was material as to why Placer Dome would make fraudulent representations to ECM. The final prong is satisfied because the representations Placer Dome made to Gold Fields were similar to the representations made to ECM. Therefore, the excluded evidence satisfies the requirements of Rule 4C4(b). It fails, however, to clear the hurdle of Rule 403.
 
 
 46
 Evidence admissible under Rule 404(b) may still be excluded if it fails to satisfy the requirements of Rule 403, which allows a district court to exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403; see also United States v. Paguio, 114 F.3d 928 (9th Cir.1996).
 
 
 47
 The probative value of the evidence was equivocal. The prejudicial impact on the jury, however, would have been unfair and substantial. If the evidence had been received, the jury might well have jumped to the impermissible conclusion that because Placer Dome lied in another transaction, it had the propensity to lie, and therefore, it lied to ECM. We conclude the trial court did not abuse its discretion by excluding the evidence of Placer Dome's prior discussions with Gold Fields.
 
 
 48
 b. Havenstrite's Expert Testimony
 
 
 49
 ECM argues that the district court abused its discretion by failing to exclude the expert testimony of Stuart Havenstrite. ECM objected to Havenstrite's testimony regarding industry practice because, it argued, Havenstrite described fraud as a typical industry practice, and stated legal conclusions. ECM's argument is not supported by the record. Havenstrite did not describe fraud as a typical industry practice. Nor did he state legal conclusions. None of Havenstrite's statements referenced the elements of fraud or concealment under Nevada law. The district court did not abuse its discretion by refusing to exclude Havenstrite's testimony.
 
 
 50
 c. Placer Dome's Protective Cross-Appeal
 
 
 51
 We do not reach the arguments in Placer Dome's cross-appeal because they relate to the measure of damages on ECM's tort claims, claims which the jury's verdict rejected and which verdict we uphold.
 
 III. CONCLUSION
 
 52
 We affirm the district court on all issues, except its decision granting summary judgment in favor of Placer Dome on the tenancy in common issue. We reverse the district court's summary judgment on that issue and remand to the district court for further proceedings to determine whether Placer Dome became obligated to ECM as a tenant in common for performance of the lessee's covenants in the ECM-Royal Gold lease, and if so, what effect that has on the rights and obligations of the parties.
 
 
 53
 Each party shall bear its own costs for this appeal.
 
 
 54
 AFFIRMED in part, REVERSED in part and REMANDED.
 
 
 
 **
 Hon. Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Additionally, the RCJVA might establish at least equitable ownership of Placer Dome in the ECM-Royal leasehold estate. On remand, the district court should consider whether the RCJVA created an equitable interest even if Royal Gold held legal title to the lessee's leasehold interest, and whether a covenant running with the land would attach to such an equitable interest