136 Nev., Advance Opinion 47

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| GEORGE STUART YOUNT, INDIVIDUALLY, AND IN HIS CAPACITY AS OWNER OF GEORGE YOUNT IRA, Appellant, vs. CRISWELL RADOVAN, LLC; CR CAL NEVA, LLC; ROBERT RADOVAN; WILLIAM CRISWELL; CAL NEVA LODGE, LLC; POWELL, COLEMAN AND ARNOLD LLP; DAVID MARRINER; AND MARRINER REAL ESTATE, LLC, Respondents. | No. 74275 FILED JUL 30 2020 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Appeal from a final judgment in a contract and tort action. Second Judicial District Court, Washoe County; Patrick Flanagan and Jerome M. Polaha, Judges.

*Affirmed in part, reversed in part, and remanded.*

Lewis Roca Rothgerber Christie LLP and Daniel F. Polsenberg, Joel D. Henriod, Abraham G. Smith, and Adrienne Brantley-Lomeli, Las Vegas; Kaempfer Crowell and Richard G. Campbell, Jr., Reno, for Appellant.

Howard & Howard Attorneys PLLC and Martin A. Little, Ryan T. O'Malley, and Alexander Villamar, Las Vegas, for Respondents Criswell Radovan, LLC; CR Cal Neva, LLC; Robert Radovan; William Criswell; Cal Neva Lodge, LLC; and Powell, Coleman and Arnold LLP.

20- 27719

Simons Hall Johnston PC and Mark G. Simons, Reno,
for Respondents David Marriner and Marriner Real Estate, LLC.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, SILVER, J.:

This case arises from an attempt to restore and reopen the historic Cal Neva Lodge, a resort and casino originally constructed in the 1920s, which sits on the California-Nevada border near Lake Tahoe. As the restoration project neared completion, a critical loan unexpectedly fell through. Certain investors in the project ostensibly collaborated to undermine that loan. The entire project subsequently failed, and investor George Stuart Yount sued the developers and others involved in setting up his investment in the project. The defendants asserted affirmative defenses but did not file any counterclaims or request any damages. At the conclusion of trial, the district court denied relief on Yount's claims and, despite the defendants never seeking to file a counterclaim or requesting damages, awarded the defendants damages. The district court based its award on evidence that Yount was involved with the group of investors that undermined the loan and caused the project to fail, thereby damaging the defendants.

In this opinion, we primarily address whether the district court improperly awarded the defendants damages where no defendant expressly asserted a counterclaim or requested damages. In particular, we address whether the parties tried a counterclaim by implied consent under NRCP

15(b) and whether the damages award can be upheld under NRCP 8(c) or 54(c). We conclude the record neither supports the district court's determination that the parties tried a counterclaim by consent nor supports upholding the damages award. We therefore reverse the damages award and remand for the district court to remove that award from its order. We affirm, however, the district court's decision to deny relief on Yount's claims, as Yount failed to prove he was entitled to relief.

## FACTS

*The Cal Neva Lodge redevelopment project*

Property developers William Criswell and Robert Radovan purchased the historic Lake Tahoe Cal Neva Lodge (the Lodge) in 2013, intending to renovate and reopen it. As pertinent here, they created the following Nevada limited liability companies: Criswell Radovan, LLC, as a conduit to move money; CR Cal Neva, LLC, as the manager for the Cal Neva project; and, through CR Cal Neva, LLC, Cal Neva Lodge, LLC, to purchase and develop the property.

To raise funds needed for the project, Criswell and Radovan issued a Private Placement Memorandum (PPM) soliciting $20 million in equity investment. Under the PPM, each investment of $1 million would give the investor a "founder's share," amounting to a 3.5% ownership in Cal Neva Lodge, LLC. To subscribe for a founder's share, an investor would sign a subscription agreement with Cal Neva Lodge, LLC. CR Cal Neva purchased two founder's shares, and the subscription agreement allowed CR Cal Neva to sell one of those shares at a future time. The largest investor under the PPM was the Incline Men's Club Investment Group (IMC).

David Marriner lived in nearby Incline Village and became aware of the project. He contacted Criswell and Radovan, who hired

SUPREME COURT
OF
NEVADA

(O) 1947A

3

Marriner's real estate consulting firm to work on the project. They also asked Marriner to help find investors for the Lodge. Marriner, who was also an investor, knew Stuart Yount socially and introduced Yount to the project, but Yount did not immediately invest.

In July 2015, Marriner informed Yount that only $1.5 million of equity remained available for investment under the PPM. At that time, the Lodge was set to open in December. Yount spoke with Radovan about the project, and Marriner sent Yount the investment documents, including the PPM. The PPM indicated that the project was over budget and would need to be refinanced, pushing back the schedule. Marriner communicated to Yount in August and September that Criswell and Radovan were trying to close out the final founding membership, as Yount still had not invested.

Soon thereafter, however, Les Busick purchased the final $1.5 million founder's share under the PPM. Simultaneously, Yount—after discussing the investment with his accountant—decided to buy a $1 million founder's share. Criswell and Radovan sold Yount one of their CR founder's shares, as permitted by their subscription agreement. Yount signed a subscription agreement with Cal Neva Lodge, and his investment funded on October 13, 2015. During this same time, Radovan was considering a $55 million refinance of the project to obtain extra funds necessary for its completion.

Cal Neva Lodge's executive committee, consisting of Criswell, Radovan, two IMC members, and Busick, met in early November to discuss the refinance after Mosaic Real Estate Investors, LLC, the company slated to fund it, pressured Radovan to finalize the deal. The executive committee, however, wanted to change certain loan terms and was therefore not ready to complete the refinance deal. Criswell and Radovan then loaned $50,000

Supreme Court
of
Nevada

(O) 1947A

4

to Cal Neva Lodge so that Cal Neva Lodge could deposit those funds with Mosaic to secure a term sheet from Mosaic.

By early December 2015, it was apparent the Lodge would not open on time. Although the hotel was nearly complete, the foundation in the bar area needed rebuilding. The opening was therefore delayed until spring 2016. On December 12, Criswell and Radovan met with the executive committee to explain the cost overruns and seek approval to secure the Mosaic loan. The executive committee did not approve the loan, and the meeting became heated.

The following day, Yount voiced his concerns about the project's failing to Radovan. Around the same time, Yount, the IMC, and another investor, apparently unhappy with Criswell and Radovan, began discussing replacing Mosaic with another financer. Yount asked for the return of his $1 million investment, but that money had already been spent. Yount then learned that he had purchased one of CR's founder's shares—instead of a share under the PPM—and emailed Marriner to complain. Criswell and Radovan then asked Yount to sign documents stating his intent had been to buy a CR share, but Yount refused.

The executive committee finally approved the loan in late January 2016, and Radovan planned to meet with Mosaic a few days later, but Mosaic canceled the meeting via email at the last moment. Mosaic stated that it had met with a group of Cal Neva investors (later discovered to include IMC members) who "were interested in hearing about the history of Mosaic's involvement in CalNeva," and that Mosaic told them that Mosaic had not heard "much" from Criswell and Radovan for nearly three months. Mosaic said that the investors "explain[ed] a little of the history of the deal from their perspective" and that it appeared to Mosaic as though the project

was "a little bit of a mess right now." Mosaic therefore was going to "step back, tear up the executed term sheet," so that the parties running the project had "time to figure things out." Once the Mosaic loan fell through, other lenders withdrew from the project and it failed.

*Yount's lawsuit*

Yount sued Criswell, Radovan, CR Cal Neva, Criswell Radovan, LLC, the Cal Neva Lodge, LLC, Marriner and his real estate company, and others[1] for breach of contract, breach of fiduciary duty, fraud, negligence, conversion, and securities fraud. Pertinent here, Yount generally alleged that Marriner had misrepresented the project's health and that the defendants, particularly Marriner and Radovan, misinformed Yount that $1.5 million in founder's shares remained available to induce him to invest, despite knowing they had already sold those shares to Busick. Yount alleged that his purchase of a founder's share from Criswell and Radovan, rather than through the same process as the other investors, damaged him in excess of $1 million.[2]

CR answered the complaint and asserted affirmative defenses, including comparative negligence, failure to mitigate damages, unclean hands, and indemnity/contribution, essentially alleging that Yount's own actions or omissions caused the damages he claimed. Marriner similarly responded to Yount's claims by asserting that Yount caused his own

---

[1]We do not address the parties below who are not parties to this appeal. We will hereinafter refer to Criswell, Radovan, CR Cal Neva, Criswell Radovan, LLC, and the Cal Neva Lodge, LLC, collectively as "CR." We will refer to Marriner and his real estate company collectively as "Marriner."

[2]Yount also requested punitive damages, interest on the judgment, and attorney fees and costs.

damages, if any. Neither CR nor Marriner asserted a counterclaim or requested damages. They also did not request any damages or other affirmative relief in their unsuccessful pretrial motions for summary judgment. Their proposed findings of fact and conclusions of law submitted before trial similarly did not address any counterclaim or damages against Yount.

The case proceeded to a bench trial before Judge Patrick Flanagan. Considerable evidence addressed Yount's involvement with the IMC and its actions to undermine the project's funding involving Mosaic. Emails demonstrated Yount was in contact with the IMC and included in conversations disparaging Criswell and Radovan, but those emails did not show Yount directly undermined the Mosaic loan. CR repeatedly asserted throughout trial, however, that no defendant had asserted counterclaims against Yount and that the case was not about the project's collapse. Marriner did not attempt to correct CR's characterization of the trial issues or assert that he had made claims against Yount.

Yount focused his closing argument on what happened before he funded his investment and argued that CR and Marriner tried to improperly shift the focus of trial to what occurred after Yount purchased his share. Yount ultimately conceded that no functional difference existed between a founder's share and the share he purchased. CR responded that, to the extent Yount was damaged, Yount caused those damages by participating with the other investors in undermining the Mosaic loan, resulting in the project's failure. CR also asserted that the failed project "cost CR Cal Neva over $2 million in damages." Marriner did not argue that Yount directly undermined the Mosaic loan, but nevertheless faulted Yount for failing to warn CR of the IMC's plans to undermine the loan and asserted

Supreme Court
OF
Nevada

(O) 1947A

7

that Yount's damages arose from the project's failure, rather than from how Yount obtained his founder's share.

At the conclusion of the bench trial, Judge Flanagan stated his detailed oral ruling, finding against each of Yount's claims. Judge Flanagan thereafter addressed "[t]he defendants' counterclaim [of] unclean hands" and found that "it was the intent of the IMC to kill this loan" and "but for the intentional interference with the contractual relations between Mosaic and Cal Neva, LLC, this project would have succeeded." Judge Flanagan ordered judgment in favor of the defendants and sua sponte awarded Radovan and Criswell damages along with attorney fees and costs. In a written "amended order" issued a few days later, Judge Flanagan clarified the award: $1.5 million each to Criswell, Radovan, and Marriner; two years' salary and management fees to Criswell and Radovan; lost development fees to Criswell Radovan, LLC; and lost development fees to CR Cal Neva, LLC. Sadly, Judge Flanagan suddenly fell ill and passed away before entering written findings of fact and conclusions of law.

Yount subsequently appealed the amended order clarifying the damages award, while, in the district court, the case was reassigned to Judge Jerome Polaha. After reviewing the record along with Judge Flanagan's oral ruling, Judge Polaha ordered Yount to pay $1.5 million in compensatory damages to each of Criswell, Radovan, and Marriner. The parties then filed various motions in the district court, with CR moving to amend the judgment; Marriner moving to amend his answer to include a counterclaim; and Yount moving for judgment as a matter of law, for relief from the judgment, to alter and amend the judgment, for a new trial, and for limited post-judgment discovery regarding the Mosaic loan.

This court then filed an order ruling that, as an appeal had been timely taken from Judge Flanagan's written amended order and no post-judgment motions had been filed at that time, "the district court has been divested of its jurisdiction to grant the motions as of the docketing of th[is] appeal." *Yount v. Criswell Radovan, LLC*, Docket No. 74275 (Order, Aug. 24, 2018). The case was reassigned in district court again, this time to Judge Egan Walker, who found he lacked jurisdiction to rule on the parties' post-judgment motions based on this court's order and declined to exercise jurisdiction to grant Yount's motion for post-trial discovery.

## DISCUSSION

Yount argues on appeal that the district court erred by awarding damages to respondents when they had not filed a counterclaim or requested damages.[3] For the reasons set forth below, we agree that the district court improperly awarded damages to respondents in the absence of an express or implied counterclaim.[4]

---

[3]No error arises from Judge Polaha entering a decision based on Judge Flanagan's findings, as those findings were competent. *See Smith's Food King No. 1 v. Hornwood*, 108 Nev. 666, 668-69, 836 P.2d 1241, 1242 (1992) (providing that a successor judge must conduct a new trial if the previous judge failed to issue competent findings of fact). And Judge Walker's order denying post-judgment discovery is not appealable, as it issued after the final judgment and does not alter any rights in that judgment. NRAP 3A(b) (setting forth appealable decisions); *Gumm v. Mainor*, 118 Nev. 912, 913-14, 59 P.3d 1220, 1221 (2002) (addressing special orders).

[4]Yount also argues the district court erred by dismissing certain causes of action. We have carefully reviewed the record and conclude the district court did not err by dismissing Yount's claims. *See Wells Fargo Bank, N.A. v. Radecki*, 134 Nev. 619, 621, 426 P.3d 593, 596 (2018) (providing the standard of review for reviewing a judgment following a bench trial). Specifically, the record supports the finding that Yount failed

Following a bench trial, we will not overturn the district court's findings of fact "unless they are clearly erroneous or not supported by substantial evidence." *Wells Fargo Bank, N.A. v. Radecki*, 134 Nev. 619, 621, 426 P.3d 593, 596 (2018). We review de novo the district court's interpretation of court rules. *Casey v. Wells Fargo Bank, N.A.*, 128 Nev. 713, 715, 290 P.3d 265, 267 (2012). Where a Nevada rule is similar to an analogous federal rule, the cases interpreting the federal rule provide persuasive authority as to the meaning of the Nevada rule. *Vanguard Piping Sys., Inc. v. Eighth Judicial Dist. Court*, 129 Nev. 602, 608, 309 P.3d 1017, 1020 (2013).

The record is devoid of evidence that either CR or Marriner expressly asserted any counterclaim before or during trial. To the contrary, CR repeatedly denied asserting a counterclaim. Therefore, the damages award was appropriate only if CR and Marriner raised and proved claims against Yount at trial sufficient to support the damages awards. In

___

to prove damages because he sought, and received, a founder's share, and the record does not show that Yount's share was functionally different from a share under the PPM. *See Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (breach of contract); *Stalk v. Mushkin*, 125 Nev. 21, 28, 199 P.3d 838, 843 (2009) (breach of fiduciary duty); *Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 824, 221 P.3d 1276, 1280 (2009) (negligence); *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 328-29, 130 P.3d 1280, 1287 (2006) (conversion); *Bulbman, Inc. v. Nev. Bell*, 108 Nev. 105, 111, 825 P.2d 588, 592 (1992) (fraud). Moreover, we have carefully reviewed the district court's factual findings regarding the additional elements of those claims and determine that they are supported by substantial evidence. We therefore affirm the district court's decision to dismiss Yount's claims.

assessing this point, we look to the three rules of procedure the parties raise as a possible basis for the award: NRCP 15(b), NRCP 54(c), and NRCP 8(c).[5]

*NRCP 15(b)*

Each party to this appeal argues at length as to whether CR and Marriner tried a counterclaim at trial by implied consent under NRCP 15(b). Yount contends he was not on notice of a counterclaim; CR and Marriner repeatedly conceded they had no counterclaim; and any evidence relevant to a counterclaim was, instead, adduced to address issues expressly raised by the pleadings. Marriner counters that Yount knew the case focused on his intentional interference with the contractual relationship between Cal Neva Lodge and Mosaic and argues that Yount introduced evidence to minimize his interference with that loan. CR similarly argues that Yount's own evidence was relevant to his interference with the Mosaic loan and that he did not object to the admission of evidence regarding that interference.

NRCP 15(b) provides that an issue not raised in the pleadings may nevertheless be tried by the parties' "express or implied consent," and that the court should treat such issues "as if they had been raised in the pleadings." Amending the pleadings to include an issue tried by consent is not required for the outcome on that issue to be valid.[6] NRCP 15(b). We

_____

[5]We address these rules of procedure as they existed in 2017. The Nevada Rules of Civil Procedure were amended on March 1, 2019. *In re Creating a Comm. to Update and Revise the Nev. Rules of Civil Procedure*, ADKT 522 (Order Amending the Rules of Civil Procedure, the Rules of Appellate Procedure, and the Nevada Electronic Filing and Conversion Rules, Dec. 31, 2018). Those amendments did not substantively change the language at issue here. *See id.*

[6]NRCP 15(b) refutes any argument that NRCP 15(a) or 16(b) requires a party to amend their answer to assert a counterclaim.

 

review a district court's determination under this rule for an abuse of discretion. *See State, Univ. & Cmty. Coll. Sys. v. Sutton*, 120 Nev. 972, 987-88, 103 P.3d 8, 18-19 (2004) (addressing a motion to amend); *see also* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1493 (3d ed. 2010) (whether an issue has been tried by implied consent is reviewed for an abuse of discretion). By way of example, we have previously determined an issue was tried by consent where the plaintiff questioned witnesses regarding the issue and argued it extensively on the merits. *I. Cox Constr. Co. v. CH2 Invs., LLC*, 129 Nev. 139, 142-43, 296 P.3d 1202, 1204 (2013). In another case, we concluded an issue was tried by consent where the parties explored the issue during discovery, the defendant raised the issue in opening arguments, and the plaintiff referred to it as an issue in the case and did not object to the court admitting evidence regarding the issue at trial. *Poe v. La Metropolitana Compania Nacional de Seguros*, 76 Nev. 306, 353 P.2d 454 (1960).

Nevertheless, implied consent can be "difficult to establish as it depends on whether the parties recognized that an issue not presented by the pleadings entered the case at trial." 6 *Federal Practice and Procedure* § 1493. If evidence relevant to the implied claim is also relevant to another issue in the case, and nothing at trial indicates that the party who introduced the evidence did so to raise the implied claim, courts will generally not find that the parties tried the issue by consent. *Id.* "The reasoning behind this view is sound since if evidence is introduced to support basic issues that already have been pleaded, the opposing party may not be conscious of its relevance to issues not raised by the pleadings unless that fact is made clear." *Id.*

For example, in *Luria Brothers & Co. v. Alliance Assurance Co.*, 780 F.2d 1082, 1088 (2d Cir. 1986), the United States Court of Appeals for the Second Circuit addressed a case where the district court sua sponte awarded the defendants $900,000 in restitution in an indemnity lawsuit. The court addressed implied consent under FRCP 15(b), which turns "on whether [the parties] recognized that the issue had entered the case at trial." *Id.* at 1089. The court acknowledged that, generally, "consent may be implied from failure to object at trial to the introduction of evidence relevant to the unpled issue." *Id.* Based on that, the court determined, the evidence relevant to the unpleaded restitution issue was also relevant to a properly pleaded issue and the plaintiff's failure to object, therefore, did not imply consent "absent some obvious attempt to raise [the unpleaded issues]." *Id.* In reaching this conclusion, the circuit court explained that the record lacked comments "[ ]sufficient to warn [the party] that the trial judge was considering restitution of payment." *Id.* The court explained that the plaintiff "should have been entitled, through normal pretrial discovery, to explore . . . possible defenses to restitution. The absence of any opportunity to do so constitutes sufficient prejudice to warrant reversal of that part of the district court's order . . . ." *Id.* at 1090.

In the present case, the record does not show that the parties tried a counterclaim by implied consent. CR and Marriner failed to mention a counterclaim or propose a damages award in either their motions for summary judgment or their pretrial proposed findings of fact and conclusions of law. CR affirmed at trial that they had not advanced any counterclaim, only affirmative defenses, and Marriner did not contradict CR's characterization of the trial. Moreover, CR and Marriner never made an obvious attempt to raise a counterclaim at trial, and the trial judge gave

no indication, before his ruling, that he was considering awarding damages against Yount. Although evidence was adduced regarding Yount's involvement with the IMC and its efforts to undermine the Mosaic loan, this evidence was relevant to the affirmative defenses that Yount helped cause any damages he claimed. *See, e.g., Las Vegas Fetish & Fantasy Halloween Ball, Inc. v. Ahern Rentals, Inc.*, 124 Nev. 272, 275, 182 P.3d 764, 766 (2008) (holding that, to prove unclean hands to bar the opposing party's claim for relief, it must be shown that the opposing party acted unconscientiously, unjustly, or without good faith in the transaction); *Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 859-60, 124 P.3d 530, 546 (2005) ("[c]omparative negligence applies . . . to conduct that proximately contributes to an injury's causation," and "mitigation issues exist when the wrongdoer attempts to minimize the damages owed by showing that the harmed person failed to take reasonable care to avoid incurring additional damages"). And we agree with the above authorities that, because this evidence was relevant to pleaded issues, Yount's failure to object to the evidence's admission at trial does not support a conclusion that he consented to, or was on notice of, the trial of an unpleaded counterclaim for damages. *See Luria Bros.*, 780 F.2d at 1089-90; 6 *Federal Practice and Procedure* § 1493.

Underscoring this lack of implied consent is the lack of consensus on which counterclaim was tried. Judge Flanagan linked the damages award to unclean hands and intentional interference with contractual relations in his oral findings, without addressing the elements

of either.[7] Judge Polaha's order, however, simply sidestepped naming a counterclaim. And, on appeal, Marriner argues he is entitled to the damages due to intentional interference with contractual relations, while CR argues that Judge Flanagan misspoke regarding an interference with contractual relations and that it instead proved damages based on Yount's tortious interference with a prospective economic advantage.

Even assuming, *arguendo*, that CR and Marriner proved their entitlement to damages on either of these counterclaims, a more troubling fact prevents affirmance here. Namely, the evidence adduced at trial failed to establish the amount of damages or Yount's individual culpability for the project's failure. *See Frantz v. Johnson*, 116 Nev. 455, 469, 999 P.2d 351, 360 (2000) ("[A] party seeking damages has the burden of providing the court with an evidentiary basis upon which it may properly determine the amount of damages."); *see also J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71 P.3d 1264, 1267 (2003) (addressing intentional interference with contractual relations); *Las Vegas-Tonopah-Reno Stage Line, Inc. v. Gray Line Tours of S. Nev.*, 106 Nev. 283, 287-89, 792 P.2d 386, 388-89 (1990) (addressing damages under a claim for wrongful interference with prospective economic advantage). At trial, the parties introduced numerous emails and substantial testimony regarding Yount's involvement with the IMC. But that evidence did not detail CR's and Marriner's actual monetary losses resulting from the project's failure. Significantly, trial testimony made only passing speculative references to those amounts because no discovery was conducted regarding the testimony. *See Mort Wallin of Lake*

---

[7]Because we determine the parties did not try a counterclaim by implied consent, we need not address whether the affirmative defense of "unclean hands" can also constitute a claim for relief.

 

*Tahoe, Inc. v. Commercial Cabinet Co.*, 105 Nev. 855, 857, 784 P.2d 954, 955 (1989) (providing that, while a party need not prove exact damages, an evidentiary basis for the amount awarded must exist). CR's post-trial motion for lost management fees only accentuates that they failed to present adequate evidence as to project-loss damages during trial. And the evidence of Yount's involvement with the IMC did not show whether, or the degree to which, Yount was directly involved in undermining the Mosaic loan—a fact Marriner acknowledged to some extent during closing argument. Likely because of the lack of evidence on this point, the district court, while clearly holding Yount culpable, did not explain why Yount, as opposed to the IMC or others, should be liable for those damages or how the court arrived at the award's amount. Under these facts, it would be unfair to determine the parties tried a counterclaim by implied consent and unjust to uphold the damages award against Yount.

In reaching our decision, we are persuaded by the Second Circuit's observation that when a counterclaim has not been tried by implied consent, the defending party is robbed of its "entitle[ment], through normal pretrial discovery, to explore [the counterclaim]. The absence of any opportunity to do so constitutes sufficient prejudice to warrant reversal of that part of the district court's order . . . ." *Luria Bros.*, 780 F.2d at 1090. Likewise here, while we do not opine as to the merits of any potential counterclaim against Yount, the absence of opportunity to conduct discovery specific to the counterclaim was prejudicial and warrants reversal of the damages award.[8] *See id.*

---

[8]In light of our decision, we need not reach Yount's additional arguments on this point.

Although we conclude the district court erred by finding a counterclaim and awarding damages, and the error warrants reversal of that award, we briefly address both NRCP 8(c) and NRCP 54(c) and explain why neither of those rules warrant upholding the damages award here.

*NRCP 8(c)*

CR argues that NRCP 8(c) allows the district court to convert CR's affirmative defense of unclean hands into a counterclaim for tortious interference with a prospective economic advantage. CR implies that Judge Flanagan misspoke by basing the damages award on intentional interference with contractual relations and that a fair reading of the ruling "makes clear" it was based upon tortious interference with a prospective economic advantage, and CR asserts that the evidence supports the award in CR's favor on such a claim. Marriner takes a broader approach, arguing that NRCP 8(c) allows a court to treat an affirmative defense as a plea for affirmative relief where justice so requires and that the facts here support affirmative relief.

NRCP 8(c) addresses affirmative defenses and allows the court to treat an affirmative defense as a counterclaim if the party "mistakenly designated" the counterclaim as an affirmative defense. In addressing FRCP 8(c), the United States Court of Appeals for the District of Columbia Circuit explained that

> affirmative defenses made in response to a pleading are not themselves claims for relief. True, [FRCP] 8(c)(2) provides a potential mechanism for extending jurisdiction to an improperly pled claim . . . . But several of our sister circuits have held that a request for relief that amounts to no more than denial of the plaintiff's demand is properly considered an answer, not a separate

SUPREME COURT
OF
NEVADA

(O) 1947A

17

claim for affirmative relief that expands the court's jurisdiction.

*Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 107 (D.C. Cir. 2016) (internal quotation marks and alterations omitted). Thus, while a counterclaim may entitle the defendant to affirmative relief, an affirmative defense generally does not. *See id.* at 107-08; *see also Riverside Mem'l Mausoleum, Inc. v. UMET Tr.*, 581 F.2d 62, 83 (3d Cir. 1978) ("A counterclaim may entitle the defendant in the original action to some amount of affirmative relief; a defense merely precludes or diminishes the plaintiff's recovery. Although the facts underlying some defenses might also support a counterclaim, not all counterclaims are valid defenses. The two concepts are distinct and must be kept so.").

Here, to the extent CR and Marriner argue they mistakenly designated counterclaims as affirmative defenses below, this is belied by the record. CR in particular repeatedly denied asserting any counterclaims against Yount and affirmed that it had only asserted affirmative defenses, including during closing arguments. Marriner likewise asserted that the evidence regarding the Mosaic loan supported his defense that Yount caused his own damages, without mentioning a counterclaim or claiming an entitlement to damages.

To the extent CR argues the district court correctly read into the trial a counterclaim for a tort that neither the parties nor the judge ever named at trial, and to the extent Marriner argues that justice requires treating his affirmative defense as a pleading for affirmative relief, this argument fails for the reasons we rejected affirming under NRCP 15(b). Specifically, where Yount—without warning of the possible damages award—did not have the opportunity to present evidence or argument to

counter those damages, justice does not weigh in favor of converting an affirmative defense to a counterclaim.

*NRCP 54(c)*

CR contends NRCP 54(c) also supports affirmance, as it allows a district court to award a party the relief to which they are entitled—even where the party fails to request such relief. Marriner more particularly argues that NRCP 54(c) allows relief for intentional interference with a contract here because the claim was tried and proven at trial.

NRCP 54(c) states, in pertinent part, that every final judgment other than a default judgment "shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." This court has explained that the rule "implements the general principle of [NRCP] 15(c), that in a contested case the judgment is to be based on what has been proved rather than what has been pleaded." *Magill v. Lewis*, 74 Nev. 381, 387-88, 333 P.2d 717, 720 (1958) (internal quotation marks omitted). In short, if an "issue was raised and tried, the court [is] empowered by NRCP 54(c) to grant the relief granted, if such relief was legally warranted." *Grouse Creek Ranches v. Budget Fin. Corp.*, 87 Nev. 419, 427, 488 P.2d 917, 923 (1971).

The threshold question here, therefore, is whether CR and Marriner in fact tried a counterclaim during the proceedings. For the reasons set forth above, we conclude the parties did not try a claim against Yount, and, therefore, NRCP 54(c) does not entitle CR and Marriner to relief.[9]

---

[9]Again, we note CR and Marriner's alleged damages were not adequately explored at trial. As to CR, Radovan testified to a damages amount but provided no supporting documentation and did not testify to

SUPREME COURT
OF
NEVADA

(O) 1947A

19

## CONCLUSION

NRCP 15(b) allows a party to try a counterclaim by implied consent. NRCP 8(c) and 54(c) provide additional grounds on which a district court may, under certain circumstances, award relief in the absence of a claim or counterclaim. Here, the district court sua sponte awarded respondents damages. The record, however, does not show the parties tried a counterclaim by implied consent or that respondents were otherwise entitled to the awarded damages.[10] Accordingly, we conclude the district court abused its discretion by awarding damages to CR and Marriner based upon an untried counterclaim and reverse the damages award. As the

_____

how he calculated the amount, and CR's post-trial motion seeking to add millions to the amount awarded at trial demonstrates that trial evidence on that issue was severely lacking. As to Marriner, although he argues various documents sufficiently established his damages, he only introduced the evidence to defend against Yount's claims and to support his defenses, not as support for a damages request.

[10]In light of our decision, we need not address the remaining arguments on appeal. And, as the parties do not address the district court's attorney fees awards, we decline to address them. *See Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3 (2011) ("Issues not raised in an appellant's opening brief are deemed waived.").

record supports the district court denying relief on Yount's claims, we affirm that portion of the decision. We remand to the district court for further proceedings consistent with this opinion.

_____, J.
Silver

We concur:

_____, C.J.
Pickering

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

