**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANTHONY GANTNER,<br>*Appellant*,<br><br>v.<br><br>PG&E CORPORATION;<br>PACIFIC GAS & ELECTRIC<br>COMPANY,<br>*Appellees.* | No. 21-15571<br><br>D.C. No.<br>4:20-cv-02584-HSG<br><br>ORDER CERTIFYING<br>QUESTIONS TO THE<br>SUPREME COURT OF<br>CALIFORNIA |

Filed February 28, 2022

Before: Danny J. Boggs,\* John B. Owens, and
Michelle T. Friedland, Circuit Judges.

Order

---

\* The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Certification of Questions to Supreme Court of California / Bankruptcy

The panel withdrew the case from submission and certified to the Supreme Court of California the following two questions of state law:

> (1) Does California Public Utilities Code § 1759 preempt a plaintiff's claim of negligence brought against a utility if the alleged negligent acts were not approved by the California Public Utilities Commission, but those acts foreseeably resulted in the utility having to take subsequent action (here, a Public Safety Power Shutoff), pursuant to CPUC guidelines, and that subsequent action caused the plaintiff's alleged injury?

> (2) Does PG&E's Electric Rule Number 14 shield PG&E from liability for an interruption in its services that PG&E determines is necessary for the safety of the public at large, even if the need for that interruption arises from PG&E's own negligence?

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## ORDER

We respectfully ask the Supreme Court of California to exercise its discretion to decide the certified questions set forth in section II of this order.

## I. Administrative Information

We provide the following information in accordance with California Rule of Court 8.548(b)(1). The caption of this case is:

No. 21-15571

ANTHONY GANTNER, Appellant,

v.

PG&E CORPORATION; PACIFIC GAS & ELECTRIC COMPANY, Appellees.

The names and addresses of counsel for the parties are:

For Appellant Anthony Gantner: Nicholas A. Carlin, Brian S. Conlon, and Leah Romm, Phillips Erlewine, Given & Carlin, LLP, 39 Mesa Street, Suite 201, San Francisco, CA 94129; Bonny E. Sweeney, Hausfeld LLP, 44 Montgomery Street, Suite 3400, San Francisco, CA 94104.

For Appellees PG&E Corporation and Pacific Gas & Electric Company (collectively, "PG&E"): Omid Nasab and Kevin Orsini, Cravath, Swaine & Moore, LLP, 825 8th Avenue, New York, NY 10019;

Peter J. Benvenutti and Thomas B. Rupp, Keller Benvenutti Kim, LLP, 650 California Street, Suite 1900, San Francisco, CA 94108; Theodore Elias Tsekerides, Weil Gotshal & Manges, LLP, 767 5th Avenue, New York, NY 10153.

We designate Anthony Gantner as the petitioner if our request for certification is granted. He is the appellant before our court.

## II. Certified Questions

We certify to the Supreme Court of California the following two questions of state law:

(1) Does California Public Utilities Code section 1759 preempt a plaintiff's claim of negligence brought against a utility if the alleged negligent acts were not approved by the California Public Utilities Commission ("CPUC"), but those acts foreseeably resulted in the utility having to take subsequent action (here, a Public Safety Power Shutoff), pursuant to CPUC guidelines, and that subsequent action caused the plaintiff's alleged injury?

(2) Does PG&E's Electric Rule Number 14 shield PG&E from liability for an interruption in its services that PG&E determines is necessary for the safety of the public at large, even if the need for that interruption arises from PG&E's own negligence?

We certify these questions pursuant to California Rule of Court 8.548. The answers to these questions will determine the outcome of the appeal currently pending in our court. We will accept and follow the decision of the California Supreme Court on these questions. Our phrasing of the questions should not restrict the California Supreme Court's consideration of the issues involved.

### III. Statement of Facts

Anthony Gantner ("Plaintiff") is a resident of St. Helena, California, and a PG&E customer. Plaintiff filed a Class Action Complaint in December 2019 in the United States Bankruptcy Court for the Northern District of California, asserting a claim under California Public Utilities Code section 2106 in an adversary proceeding in PG&E's Chapter 11 proceedings. Plaintiff alleges negligence on the part of PG&E, claiming that PG&E had a duty to maintain its grid in a safe condition but failed to do so and that "PG&E's safety record is an abomination." Specifically, Plaintiff alleges, among other things, that "PG&E has 113,000 miles of conductors, and over 60% of those conductors are and were highly susceptible to failure"; that "PG&E repeatedly delayed upgrading its oldest transmission lines"; and that, "[i]n an investigation covering 1994 to 1998, CPUC staff accused PG&E of more than 500,000 counts of violating state laws requiring utilities to keep trees pruned a safe distance from overhead electric lines."

Plaintiff further alleges that, because of PG&E's negligence in maintaining its electrical equipment, PG&E was forced to implement Public Safety Power Shutoffs ("PSPSs") on five occasions in the autumn of 2019 to decrease the chance that its equipment would cause wildfires. Since 2019, public electric utilities have been required to have a PSPS protocol in place. *See* Cal. Pub.

Util. Code § 8386(c)(6).  CPUC has adopted the policies that a utility "has the burden of demonstrating that its decision to shut off power is necessary to protect public safety," Cal. Pub. Utils. Comm'n, Resolution ESRB-8, at 1, 4 (2018), and that a utility "must deploy de-energization as a measure of last resort and must justify why de-energization was deployed over other possible measures or actions," Cal. Pub. Utils. Comm'n, Decision 19-05-042 app. A at A1 (2019).

As a result of the 2019 PSPSs, Plaintiff alleges that he and others were without power for "many days, in some cases up to 17 days total and upwards of 10 days in a row." Those affected by the PSPSs allegedly suffered "loss of habitability of their dwellings, loss of food items in their refrigerators, expenses for alternative means of lighting and power," and other damages.  Plaintiff seeks to certify a class that includes "[a]ll California residents and business owners" who had their power shut off by PG&E during the 2019 PSPSs or any subsequent PSPS during this litigation. Plaintiff requests $2.5 billion in damages for the class.

PG&E moved in bankruptcy court to dismiss the Complaint.  PG&E argued that the court lacked subject matter jurisdiction to hear the claim because it was preempted by California Public Utilities Code section 1759. PG&E argued, in the alternative, that the Complaint should be dismissed because PG&E's Electric Rule Number 14 shields PG&E from liability for an interruption in service that PG&E believes is necessary for public safety.[1]  CPUC filed an amicus brief in the bankruptcy court, contending that "litigation and adjudication of Plaintiff's claim . . . would

---

[1] PG&E also argued that the Complaint should be dismissed because it failed to adequately plead that PG&E's alleged negligence caused Plaintiff's damages.

hinder and interfere with enforcement of the Commission's guidelines concerning public safety power shutoffs." The bankruptcy court issued a ruling in March 2020 dismissing the Complaint without leave to amend, holding that Plaintiff's claim was preempted by section 1759, and not addressing PG&E's Rule 14 argument.[2]

In April 2020, Plaintiff appealed the bankruptcy court's dismissal of his Complaint to the United States District Court for the Northern District of California. In March 2021, the district court affirmed dismissal, ruling only on preemption grounds, and denying Plaintiff leave to amend.

Plaintiff filed a timely notice of appeal of the district court's decision. Alice Stebbins, the former Executive Director of CPUC, filed an amicus brief in support of Plaintiff, arguing that imposing liability on PG&E under Plaintiff's theory would not be inconsistent with CPUC's policies or its "regulatory reach." CPUC filed an amicus brief, which nominally did not support either party but, like the brief it had filed in the Bankruptcy Court, took the position that section 1759 preempted Plaintiff's claim. We heard oral argument on January 12, 2022.

## IV. Explanation of Certification Request

No controlling California precedent has answered the certified question whether California Public Utilities Code section 1759 preempts a negligence claim alleging that a utility violated state-law duties and consequently needed to take an action, with the permission of CPUC, that caused the

---

[2] The bankruptcy court also concluded that Plaintiff's claim failed because PG&E's alleged negligence would not have proximately caused Plaintiff's damages.

plaintiff to suffer damages. Similarly, no controlling California precedent has interpreted Rule 14 or has explained how a court should apply a utility's tariff rule when the text is susceptible to two reasonable interpretations. These questions are dispositive in this case and have significant public policy implications for California residents and utilities.

## A.

This case presents a novel question about the scope of preemption under California Public Utilities Code section 1759. California law provides a private right of action against any public utility that acts unlawfully or that "omits to do any . . . thing required to be done." Cal. Pub. Util. Code § 2106. But section 1759 limits the jurisdiction of courts to hear any suit that could interfere with CPUC "in the performance of its official duties." *Id.* § 1759. To the extent there is conflict between sections 1759 and 2106, the California Supreme Court has held that section 1759 preempts a claim brought under section 2106 if an award of damages would "hinder or frustrate [CPUC's] declared supervisory and regulatory policies." *San Diego Gas & Elec. Co. v. Superior Ct.* ("*Covalt*"), 920 P.2d 669, 673 (Cal. 1996) (quoting *Waters v. Pac. Tel. Co.*, 523 P.2d 1161, 1162 (Cal. 1974)). Plaintiff alleges that, because of PG&E's negligent maintenance of its grid, PG&E needed to implement PSPSs, which caused his injury. In his filings before the bankruptcy court, and throughout this litigation, Plaintiff has made clear that "this case is not about whether the shutoffs were appropriate or how PG&E handled them." Rather, Plaintiff contends, "it is about *why* they had to be done in the first place." PG&E responds that, regardless of how Plaintiff frames his theory, any damages PSPSs cause cannot be recovered in litigation because of section 1759

preemption. This case thus presents the question whether adjudicating Plaintiff's claim that PG&E negligently maintained its grid would hinder or frustrate CPUC's regulatory authority with respect to PSPSs, when Plaintiff does not challenge the manner in which the PSPSs were executed but rather argues that they are a link in the causal chain that connects PG&E's alleged negligence to his damages.

When the California Supreme Court has considered whether a claim was preempted by section 1759, the Court has examined whether the allegedly tortious conduct was permitted by CPUC's policies. For example, in *Covalt*, the California Supreme Court held that section 1759 preempted a private nuisance claim that alleged that a utility's power lines emitted "high and unreasonably dangerous levels of electromagnetic radiation onto plaintiffs' property." *Id.* at 678. CPUC had previously decided that "regulated utilities need take no action to reduce [electromagnetic] field levels from existing powerlines." *Id.* at 697. The Court held that plaintiffs' claim was preempted because a determination of liability "would be inconsistent with [CPUC's] conclusions" that the challenged conduct was lawful. *Id.* In *Hartwell Corp. v. Superior Ct.*, 38 P.3d 1098 (Cal. 2002), the California Supreme Court considered an allegation that public utilities provided unhealthy drinking water. *Id.* at 1102. The Court held that that claim was preempted insofar as the water was in compliance with federal and state standards because "[a]n award of damages on the theory that the public utilities provided unhealthy water, even if the water met [applicable] standards, 'would plainly undermine [CPUC's] policy.'" *Id.* at 1113 (quoting *Covalt*, 920 P.2d at 704). But the Court also held that "damage claims based on the theory that the water *failed* to meet federal and state drinking water standards are not preempted by section

1759." *Id.* (emphasis added). The Court reasoned that a finding that "a public water utility violated [those] standards would not interfere with the [C]PUC regulatory policy." *Id.*

Existing California precedent does not address whether Plaintiff's claim is preempted. In *Covalt* and *Hartwell*, and every other California Supreme Court case addressing section 1759 preemption, the utility's allegedly unlawful conduct giving rise to the claim was the same conduct that directly caused the plaintiffs' alleged injuries. Determining whether each claim was preempted required the Court to decide only whether that challenged conduct was consistent with CPUC's policies. In this case, by contrast, there are two separate sets of conduct at issue. Plaintiff alleges that, first, PG&E negligently maintained its grid and, second, PG&E consequently had to engage in PSPSs, which caused Plaintiff's damages. The challenged conduct—PG&E's allegedly negligent maintenance of its grid—would undoubtedly contravene California law and CPUC's policies if Plaintiff's allegations about that conduct were proven true.[3] But the conduct that directly caused Plaintiff's injury—the 2019 PSPSs—were implemented with CPUC's permission. The caselaw does not answer whether section 1759 prevents Plaintiff from suing PG&E for its initial negligence given that the PSPSs, which Plaintiff alleges

---

[3] *See, e.g.*, Pub. Util. § 8386(a) ("Each electrical corporation shall construct, maintain, and operate its electrical lines and equipment in a manner that will minimize the risk of catastrophic wildfire posed by those electrical lines and equipment."); *id.* § 451 ("Every public utility shall furnish and maintain such adequate, efficient, just, and reasonable service, instrumentalities, equipment, and facilities . . . as are necesary [*sic*] to promote the safety, health, comfort, and convenience of its patrons, employees, and the public.").

were the foreseeable result of that negligence and caused his injuries, were allowed under CPUC's policies.

Cognizant of the burden that certifying a question adds to a state court's caseload, we have stated that "[t]he certification procedure is reserved for state law questions that present significant issues, including those with important public policy ramifications, and that have not yet been resolved by the state courts." *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003). This question meets that high standard for certification. Wildfires are increasingly an annual occurrence throughout California, and at least some PSPSs may be necessary to minimize the number of those fires. How California allocates the costs of wildfires and PSPSs involves important policy considerations. Given the significance of the policy issues implicated by Plaintiff's negligence claim, and the fact that no caselaw from the California Supreme Court directly addresses whether section 1759 preempts it, we certify that question to the California Supreme Court.

## B.

We also certify a question about the interpretation of Rule 14, which would independently foreclose Plaintiff's theory of liability if it were resolved in PG&E's favor. Rule 14 is a tariff rule that PG&E has filed with CPUC. California law requires utilities to file with the CPUC "tariff schedules containing rates, charges and classifications, 'together with all rules, contracts, privileges, and fa[c]ilities which in any manner affect or relate to rates, tolls, rentals, classifications, or service.'" *Waters*, 523 P.2d at 1163 (quoting Pub. Util. § 489(a)). A properly published and filed tariff rule "ha[s] the force and effect of a statute." *Dyke Water Co. v. Pub. Utils. Comm'n*, 363 P.2d 326, 337 (Cal. 1961).

Rule 14 provides generally that "PG&E will exercise reasonable diligence and care to furnish and deliver a continuous and sufficient supply of electric energy to the customer, but does not guarantee continuity or sufficiency of supply." PG&E argues that the fourth paragraph of Rule 14 absolves it from any liability for service interruptions, including PSPSs. That paragraph provides:

> PG&E specifically maintains the right to interrupt its service deliveries, *without liability to the Customers or electric service providers (ESPs) affected*, when, in PG&E's sole opinion, such interruption is necessary for reasons including, but not limited to, the following:

> 1. Safety of a customer, a PG&E employee, or the public at large.

(emphasis added). Plaintiff argues, however, that a sentence in the first paragraph of Rule 14 contemplates that PG&E remains liable for interruptions in service that result from its own negligence. That sentence reads:

> PG&E will not be liable for interruption or shortage or insufficiency of supply, or any loss or damage of any kind of character occasioned thereby, if same is caused by inevitable accident, act of God, fire, strikes, riots, war, or any other cause *except that arising from its failure to exercise reasonable diligence*.

(emphasis added).

Both parties have put forward reasonable interpretations of Rule 14. Under PG&E's reading, the fourth paragraph precludes liability for *any* interruption in service if, in PG&E's opinion, that interruption is necessary to protect the public at large. Under Plaintiff's reading, the first paragraph of Rule 14 limits PG&E's disclaimer of liability in the fourth paragraph by stating that PG&E is still liable for an interruption in service—even one that, in PG&E's opinion, is necessary to protect the public—if PG&E's negligence caused the interruption.

The California Supreme Court has never interpreted Rule 14 or issued an opinion that squarely answers which party's reading is correct. The California Court of Appeal, adopting a canon of construction from contract law, has held that "if there is an ambiguity in a tariff any doubt in its interpretation is to be resolved in favor of the [nondrafter and against the utility]." *Pink Dot, Inc. v. Teleport Commc'ns Grp.*, 107 Cal. Rptr. 2d 392, 397 (Ct. App. 2001) (brackets in original) (quoting *Transmix Corp. v. S. Pac. Co.*, 9 Cal. Rptr. 714, 721 (Ct. App. 1960)). Because tariff rules have "the force and effect of a statute," *Dyke Water Co.*, 363 P.2d at 337, it is unclear whether this contract-law approach to resolving an ambiguity in Rule 14 is appropriate or whether California law instead would require a court to apply standard principles of statutory construction. The California Supreme Court has never adopted the canon that ambiguities in a tariff rule must be resolved against the utility, and we are not certain whether the Supreme Court would choose to do so. *See, e.g.*, *Waters*, 523 P.2d at 1166 ("[G]eneral principles which might govern disputes between private parties are not necessarily applicable to disputes with regulated utilities."). Given that this question of Rule 14's interpretation implicates the same public policy interests identified in section IV.A and likewise determines whether

a claim such as Plaintiff's may proceed, we respectfully certify this question as well.

## V.  Accompanying Materials

The clerk of this court is hereby directed to file in the Supreme Court of California, under official seal of the United States Court of Appeals for the Ninth Circuit, copies of all relevant briefs and excerpts of the record, and an original and ten copies of this order and request for certification, along with a certification of service on the parties, pursuant to California Rule of Court 8.548(c), (d).

This case is withdrawn from submission.  Further proceedings before us are stayed pending final action by the Supreme Court of California.  The clerk is directed to administratively close this docket, pending further order from this court.  The parties shall notify the clerk of this court within seven days after the Supreme Court of California accepts or rejects certification, and again within seven days if that Court accepts certification and subsequently renders an opinion.  The panel retains jurisdiction over further proceedings.

**IT IS SO ORDERED.**